OF THE

## STATE OF ARKANSAS,

AT THE

## MAY TERM, 1883.

[Continued from Vol. 40.]

---

### STAFFORD, ET AL. V. WATSON.

1. EJECTMENT: *Title derived from common source.*
   Where the source of title is identical and the parties have no other title to rely on, neither party can go behind the person from whom they hold, or show that his claim is not good.

2. SAME: *Pleading: Presumption.*
   Where a complaint in ejectment alleges that the defendant claims title by mesne conveyance from the plaintiff's grantor, and the answer admits that the defendant has no source of title beyond the common grantor, it will be presumed in the absence of allegation and proof to to the contrary, that the defendant's title is junior and subordinate to the plaintiff's.
   (EAKIN, J. dissenting.)

APPEAL from *Jackson* Circuit Court.

Hon. R. H. POWELL, Circuit Judge.

2—R

*W. R. Coody,* for appellants.

1.   Plaintiff must recover on the strength of his own title, if at all, and not for want of title in defendant. *19 Ark., 201.*

2.   Plaintiff can only have such title as Baldwin and Jago had under tax deed and that *is void upon its face. 29 Ark. 476, 489.*

3.   There is no allegation that defendant claimed under same title with plaintiff, and as there is no allegation there can be no proof. *24 Ark., 281; 2 Id., 513; 11 Id., 134; 29 Id., 500.*

4.   In pleading a party may plead affirmatively, setting up a defense, or negatively, in avoidance ; this defendant did, specifically denying plaintiff's title and *right of posses-sion,* and that defendant was illegally in possession. Upon this issue the burden is on plaintiff, and he having failed to show title, must fail. *Sedgwick & Wait on Trial of Title of Land, p. 297; Gantt's Digest, sec. 4569.*

5.   It is questionable whether ejectment will lie for an *undivided moiety,* under *secs. 4314, 4317, Gantt's Digest.* Partition seems to be the remedy. *31 Ark., 346.*

6.   Defendants not being trespassers were not estopped from setting up possession, which is presumed legal until the contrary is shown by title or special right of possession. *Sedgwick & Wait, etc., sec. 477.*

7.   It is clear, that defendants—1st, had the right to except to plaintiff's paper title ; 2nd, That the exceptions were well taken ; and 3d, That the court erred in over-ruling the same.


*U. M. & G. B. Rose,* for appellee.

There is no motion for a new trial in the bill of excep-tions. *36 Ark.. 262, 305; 28 Ib., 450, etc.*

Both parties claim under a common source of title, and defendants could not allege that it was invalid, if such were

the case. *Wilson v. Spring, 38 Ark.*, *Woolfork v. Ashby*, *2 Met. (Ky.), 289.* See also *Remington v. Linthicum, 14 Pet., 93.* Plaintiff attempted to follow the course approved by CH. J. TANEY in the case last cited, but was prevented by the court.

Defendants knowing their title was subordinate to plaintiff's and derived from the same source, undertook to conceal it, hoping thereby to be allowed to object to the validity of the common title.

The defendants, setting up no title in themselves, and being for the purposes of this suit mere trespassers, they will not be allowed to scan too curiously the title of the plaintiff. If the plaintiff has any title whatever, perfect or imperfect, it is superior to that of the defendants, so far as appears from their pleadings, and cannot object to its sufficiency. The saying that the plaintiff must recover on the strength of his own title, and not upon the weakness of that of his adversary, does not mean that the plaintiff must have a perfect title. It only means that one man having no title at all cannot recover from another equally destitute. But if one man has a title, though an imperfect one, he may recover from a mere trespasser, because the latter cannot expose its imperfections. He is a wrong-doer, and he cannot resist the plaintiff's claim unless he can show that the plaintiff is a mere wrong-doer like himself. The defendants in this case are, as it were, trespassers who have stolen upon the lands in the night, and the plaintiffs, or any one else having a color of title, can eject them, however defeasible that title may be.

Say the court in *Zeringue v. Williams, 15 La. Ann., 76:* "Although it be true that a plaintiff in a petitory action must succeed on the strength of his own title, and not on the weakness of that of his adversary, yet, when the latter has no title at all, he cannot, as a trespasser, take advantage of any defects in the former's muniments of

title ; in such cases a title apparently good is all that is nec-
essary to maintain a petitory action."

The tax deed under which the plaintiff claims is *prima
facie* evidence, and the defendant has introduced no
evidence tending to establish its invalidity. As was held
by this court in *Cairo & Fulton R. R. Co. v. Parks, 32
Ark., 132*, and four subsequent cases, the deed is *prima
facie* evidence that all the proceedings requisite to give
validity to the deed have been performed.

*U. M. & G. B. Rose*, for appellee :

Cite an additional brief. *Sedgwick & Wait on Titles to
Land*, secs. *276, 291, 292, 294, 297; Van Horne v.
Fonda, 5 John Ch. R., 388; 20 Ark., 402; 14 Peters,
84; 51 Mo., 548; 7 Serg. & R., 230; 31 Ill., 501; 17
Id., 47; 41 Id. 516; 6 Cush., 8; 12 Ohio, N. S., 231.*

SMITH, J   This was ejectment for an undivided moiety of
a quarter section of land.   The plaintiff's evidences of title
consisted of—1, A tax deed from the clerk of Jackson
county to Baldwin and Jago, dated April 29, 1873 :   2, A
deed of trust from Baldwin to a certain trustee for his
interest in the premises, executed September 26, 1874, to
secure the payment of a debt, with power to the trustee to
sell and convey upon default; and, 3, A deed from the
trustee to the plaintiff executed in pursuance of said power.
The complaint stated that the defendant was in possession
of the whole tract and had refused, after demand made, to
admit the plaintiff to the possession of one half of the land
and its rents and profits.   It also averred upon information
and belief that the defendant held under sundry mesne con-
veyances and licenses from Baldwin.

The answer did not deny that the defendant claimed
under Baldwin, and therefore virtually admitted it.   *Gantt's
Dig. sec. 4608.*   It alleged no title whatever in the

defendant, beyond a possession of recent origin, but excepted to the sufficiency of the plaintiff's title deeds. These exceptions were overruled. The cause came on for trial before a jury, and the plaintiff had a verdict and judgment.

No doubt the tax deed standing at the head of the plaintiff's claim of title is bad, if the defendant is in a position to assail it. But it seems to be well established that where the source of title is identical, and the parties have no other title to rely upon, it is not permitted to either to go behind the person from whom they hold, or show that his claim is not good. Both parties claiming under the same right, the plaintiff was not bound to trace back his title beyond the common origin, unless the defendant showed some title in himself *aliunde*. *Riddle v. Murphy, 7 Ser. & R. 230: Jackson v. Hinman, 10 Johns. 292: Fitch v. Baldwin, 17 Id. 165: Douglass v. Scott, 5 Ohio, 124: Ward vs. McIntosh, 12 Ohio State 240: Woolfolk v. Ashby, 2 Met. Ky. 288.*

*1. EJECTMENT:*
*Title derived from common source.*

It follows from what we have said, that it was unnecessary for the plaintiff to deduce his title beyond Baldwin. If the defendant held a title superior to Baldwin's, or a title derived from Baldwin anterior to that of plaintiff, it devolved upon him to allege it and file the evidence of it. But his answer admitted that his own source of title ascended no higher than Baldwin. And in the absence of allegation and proof to the contrary, it must be presumed that it was junior and subordinate to that exhibited with the complaint.

*2. SAME:*
*Pleading: Presumption.*

The answer in truth presented no bar to the action and raised no issue to be tried.

Judgment affirmed.

### DISSENTING OPINION BY

EAKIN, J  This is an action of ejectment by Watson against Stafford, the tenant in possession, to recover an

undivided moiety of a quarter section of land. The complaint sets forth, that on the twenty-sixth of September, 1874, one Alphonso D. Baldwin was seized and possessed of an undivided moiety of the tract, "under and by virtue of" a deed duly executed by the county clerk to Baldwin and Jago on the twenty-ninth of April 1873, that he conveyed said moiety to Thomas J. Watson to secure a certain debt to the plaintiff, by deed duly filed for record on the fourth day of February, 1875 : that upon the failure of payment, the trustee, in pursuance of the power, sold the land to plaintiff on the first day of May, 1879, and executed to him a deed, by virtue of which he became seized, and the owner, and entitled to the possession of said moiety : that defendant is in possession of the whole quarter section, and refuses to recognize plaintiff's right to a moiety, or to allow him possession, or any participation in the rents and profits ; that the plaintiff is informed and believes, and so charges, that defendant does this "under sundry mesne conveyances and licenses from the said Alphonzo D. Baldwin," which are under the control of defendant, and cannot be exhibited.

With this complaint are filed documents upon which the plaintiff relies, the said deed of the clerk, which is a deed of land sold for taxes of 1869 and 1870, and also said trust deed, and the deed of conveyance from the trustee to plaintiff.

The defendant in his answer, filed September 18th, 1879, admits that he is in possession of the whole tract, as the tenant of Heard ; but denies that he is wrongfully so ; and claims that the possession of himself, and those under whom he holds, has been peaceable and adverse for more than two years. In his answer he excepts separately to the documentary evidences of title filed and relied upon by plaintiff ; especially to the clerk's tax deed, which he claims to be utterly void for nineteen specific reasons. The exceptions to the other deeds were not pressed, and need not be

further noticed.   He denies that Baldwin, at the time of the execution of the deed of trust, was seized and possessed of a moiety of the land, or that he had any title thereto, or right to convey the same.

Heard, the landlord, on the tenth day of March, 1880, was admitted to appear as co-defendant, and filed an answer on the eleventh.   He admits the possession by his tenant.   He denies that he is tenant in common with plaintiff, or that the latter has any right to possession.   He claims quiet possession in himself for over two years, and in all respects adopts the answer of Stafford.

A motion by plaintiff to make his answer more definite and certain was sustained, but as no other answer appears in the record, we presume that the answer is transcribed as amended, or that the motion was abandoned by the subsequent demurrer, to the answer, which was filed on the same day.   It was general upon the ground that the answer showed no defense.

The cause was first heard on the exceptions to the documentary evidences of title filed with the complaint.   They were over-ruled and the defendants had their exceptions to the ruling noted.   No action whatever was taken on the demurrer.

There was a trial by jury, verdict, judgment for plaintiff, and an appeal.   The record is very badly made up. There is a bill of exceptions which after several writs of *certiorari*, may be taken to show the evidence, the proceedings on the trial, motions in arrest and for new trial, and the grounds of the motions,

The first grounds for a new trial to be noticed, are those based upon alleged error of the court in admitting as evidence the deeds upon which the plaintiff relied, and as to which exceptions had been previously over-ruled.   As the deeds themselves, the exceptions, and the ruling upon them were already matters of record, and as the admission of the

deeds as evidence followed, of course, upon the ruling; and
as this, if erroneous, could not have been cured by the
grant of a new trial, without further action of the court in
reconsidering and reversing its ruling on previous excep-
tions, it is not clear that a motion for a new trial upon
those grounds was necessary, or even proper.   The admis-
sion of the deeds, in the course of the trial, was proper and
unavoidable under the rulings appearing of record before
the trial began.   Inasmuch, however, as exceptions were
saved to the rulings at the time, we are relieved from the
necessity of determining this point.   In one aspect or the
other the question is presented, whether or not the Court
erred in allowing the Clerk's deed to be used as a ground
for recovery.

The exceptions were filed under the Act of March 5th,
1875, regulating pleadings and practice in actions for the
recovery of lands, which provides that the plaintiff shall set
forth in his complaint all deeds and other written evidences
of title on which he relies for the maintenance of his suit,
and shall file copies of the same as far as they can be
obtained as exhibits therewith, and shall state such facts as
shall show a *prima facie* title in himself to the land in con-
troversy; and the defendant in his answer, shall plead in the
same manner as above required from the plaintiff.

The second section provides that "the defendant, in his
answer, shall set forth exceptions to any of said document-
ary evidence, relied on by the plaintiff, to which he may
wish to object, which exceptions shall specifically note the
objections taken."   After providing that the plaintiff shall
in like manner, within three days after answer, file like
exceptions to any documentary evidence set up by defend-
ant, the statute proceeds: "And all such exceptions shall be
sustained or over-ruled as the law may require; and if any
exception is sustained to any such evidence, the same shall
not be used on the trial, unless the defect for which the

exception is taken shall be covered by amendment." There is a further provision that all objections shall be waived which may not thus be specifically pointed out.

In construing this act, and forming the practice, this court has considered the documents filed as becoming parts of the *record* but not of the *pleadings*. *Jacks vs. Chaffin, 34 Ark., 534.* The exceptions being in the answer, are parts of the record also, and the judgment on the exceptions being necessarily so, it would seem to follow that no bill of exceptions would be necessary to bring them to the notice of this court on appeal.

The fourteenth and fifteenth specific objections made in the answer to the clerk's deed, were that it affirmatively appeared by its recitals that the lands were not sold to the highest bidder, and that they were sold for an amount in excess of the taxes, penalty and costs. '

The deed was based upon a sale of the land for the taxes of 1869 and 1870. There are no allegations as to the preliminary steps from which the power to make the sale arose. The validity of the deed rests upon its recitals, and the granting clause. It was made under the Revenue Act of April 8th, 1869, then in force. Section 140 of this act is identical with Section 5,206 of Gantt's Digest taken from the Revenue Act of April, 1873, except that the act of 1869 lacks the fourth clause of the section in the later act, saving the rights of persons under disability. The law of this case is substantially the same as that which was in force, and governed the case of the *Cairo and Fulton R. R. Co., v. Parks 32 Ark.. 131.*

The deed, amongst other things proper to be shown, recites that the taxes upon the land remained unpaid, amounting to the sum of $36.88 for the years 1869 and 1870; that it was duly advertised in a proper paper, in a list amongst other lands, with a notice attached that the whole of the lands in the list, or so much thereof as would be necessary

to pay the taxes, penalty and *expenses* charged thereon, would be sold at the Court House door of the county on the twentieth day of February, 1871; that they were offered on that day at public auction; that Baldwin and Jago bid and offered to pay the taxes, penalty and expenses due thereon, for the whole thereof, amounting to the sum of $82.45; that no person offering to pay the same for a less quantity, the land was struck off and sold to them, and said sum was paid to the collector, and that the certificate of purchase was presented to the clerk. Then follows the conveying clause.

Most of the numerous exceptions regard deficiencies in the recitals. Without specifying them, it is sufficient to say in passing, that everything is not recited which ought to have been done in order to confer authority to sell, but this is not, we think, important to the question before us. Upon common law principles the burden of showing affirmatively that all the steps had been taken to give rise to the power of sale would have been upon the claimant under the deed, to make it effective, and these things must have been shown by competent proof *aliunde*. The sale of land for taxes is an administrative proceeding. The jurisdiction does not arise save under prescribed conditions, and upon the performance of certain legal requisites. The deed itself could not afford proof of these, being only proof of its own execution. Authority to make it must have been shown before its recitals could have the force of evidence. *Cooley on taxation, p. 353; Merrick et al., v. Hutt, 15 Ark., 331; Bonnell v. Roane, 20 Ib., 114.*

The inconvenience and hardship of this rule, tending to discourage purchasers, operated to render the revenue laws inadequate to the collection of taxes, and tax deeds became proverbially worthless. This, in many, and perhaps all, the states, has prompted statutory modifications for the establishment and protection of tax titles. The act of 1869,

sec. 140, provided that the clerk's deed, when acknowledged and recorded, should vest in the grantee the title to the real estate described, and be received in courts, &c., "as conclusive evidence that each and every act and thing required to be done by the provisions of this chapter, had been complied with, and the party offering such deed in evidence shall not be required to produce the assessment, notice of sale, *nor any other matter or thing* as evidence to sustain such conveyance, and the title thereby acquired." There were some excepted cases, not here in question.

As in the case of most statutory reforms, impelled by the pressure of existing evils, the pendulum swung too far. The legislature had no right to make the mere act of the Clerk *conclusive* evidence in court of a thing which never happened, and the result of which would be to deprive a citizen of his property,

Case of *Cairo & Fulton R. R. v. Parks Supra*.

The statute should read as if the word "conclusive" were struck out. It then becomes almost identical with an old provision of the revised statutes regarding auditor's deeds for forfeited lands, which was in force from 1838 to 1875, and made such deeds "evidence that all things required by law to be done to make a good and valid sale, were done, both by the collector and auditor." The construction put by this court upon the latter act was, that an auditor's deed, without other recitals than such as were necessary to set forth the description of the property, and the consideration, with a sufficient granting clause, was *prima facie* good, and cast upon an assailant the full *onus* of showing that any act essential to confer the power of sale, had been neglected. *Merrick & Fenno v. Hutt, 15 Ark., 331.*

The deeds of collectors were governed by a statute somewhat different, and with regard to them, previous to the above cited act of 1869, it was repeatedly held that they were *prima facie* evidence of only the facts recited; but

that essential facts omitted in the recitals might be shown by proof *aliunde*. This is very clearly and carefully shown in two opinions delivered by the present, and then, Chief Justice of this Court. *Gossett et. al. v. Kent et. al., 19 Ark., 602*; *Bonnell v. Roane, 20 Ark., 114*. This has been recognized in *Budd v. Bettison, 21 Ark., 582*.

Another point has been equally well settled. Where a collector's deed contained recitals which showed *affirmatively*, that the requisites of the law, essential to the power of sale, had *not* been complied with; or that the law had been violated, it has been held void. It cannot be cured by parol testimony or otherwise. It is dead from inherent vice. See cases cited to this point in *Merrick v. Hutt, supra*; also *Walker v. Moore, 2d Dillon C. C., Rep. 256*; *Pack v. Crawford, 29 Ark., 489*.

The effect of the act of 1869 was to bring the deeds of collectors or clerks, within the range of the principles which had been applied to the construction of the act regarding the deeds of auditors; and to make this *prima facie* evidence without recitals (if they contain enough to make them good common law conveyances), that everything has been done, and every step taken, necessary to confer the power to sell, and that the sale was regular.

Nevertheless, if recitals *are* made, and they show affirmatively that the law has not been complied with in essentials, there is nothing in the act of 1869 which prevents the application of the doctrine, which avoids the deed, beyond hope of parol cure.

The deed in judgment shows affirmatively that the whole of the quarter section was sold to the purchasers, bidding the taxes, penalties and *expenses* (which may be intended as costs of advertising, etc,), no one offering to pay them for a less amount; that is, no one being willing to pay them and take a portion of the land. It had formerly been the habit to sell lands in that way for taxes, and the collector

followed the old law, but it was in no sense a sale of the quarter section for the highest price.

The act (sec. 119) required the collector to expose each tract of land separately for sale, "and the person or persons, offering at said sale, the *greatest and highest price* for said tract or lot, or part of lot, and being more than the amount of the taxes, penalty and costs of advertising said tract or lot, etc., shall be the purchaser or purchasers, thereof." Provisions are made for preserving the surplus for the owner.

This is a very essential provision, not at all satisfied by the course pursued. The bidding on the quarter section should have begun with the taxes, penalty and costs, and run up on an increasing scale of price—not down with a decreasing quantity of land. There may have been many bidders willing to pay more for the tract, who would not care for a fraction of it, at a reduced price. By the mode of sale adopted, the owner, unless able to redeem, would be forced to let the whole go for the charges alone.

The clerk's deed was void, and not admissible in evidence. It was not profferd as *color* for anything, but as effective to convey and give seizin and right of possession. Indeed it is evident from the instructions to the jury that the verdict, afterwards rendered, was based upon it. It was error to overrule the exception to it. The effect of the ruling was to send to the jury for their consideration a worthless document, which, necessarily, determined their verdict. For this error the judgment should be reversed and the case remanded with proper directions.

Much has been said in argument of the mutual obligations of tenants in common, and the right to recover in ejectment, by showing that both parties claim from a common source. It is contended that, notwithstanding the error, the verdict is right because the plaintiff alleged, and the defendant (whether from inadvertance or design) neglected to

deny, that the latter held by certain mesne conveyances from Baldwin. Perhaps he did, but that alone would not be conclusive of the rights of either party. It might be true that he held from Baldwin by a better right than the plaintiff, or by conveyances anterior in time. It might be that he held by divers muniments, and had gotten in Baldwin's supposed tax title by way of superabundant caution. These are only speculative suggestions. The facts should have been shown to the jury freed from false issues and from improper evidence, which, once admitted, was conclusive. What the jury did do was to return a verdict for plaintiff on a void deed, admitted and credited to them as valid. It is impossible for us to say what the jury *might* have done if the case had gone to them without the clerk's deed. There would have been the allegation of seizure and possession in Baldwin, positively denied, and of title in him sustained by no document, connected with a vague technical admission that defendant had a line of mesne conveyances and certain licenses from Baldwin, but what they were, or whether better or worse than plaintiff's, still uncertain. The jury were without proof of any possession, at any time, by Baldwin, or the trustee, or plaintiff, or any right to possession by either; without proof of any ouster or decision or tresspass of any kind by defendant, to show his possession to have been tortuous or unlawful.

The practice act of 1875, requiring each party to give notice of his documentary evidence by filing it, does not enable the plaintiff to recover on any less degree of proof than formerly. The rule is as stern as ever that he must recover on the strength of his own title, and not upon the weakness of his adversary's. The defendant is not bound to do more than deny the right of the plaintiff in some apt form. He may, at his own peril, decline to set up any title, and rest upon his possession, and must succeed unless the plaintiff

should show some *prima facie* title and right of possession. The defendant will then be precluded from showing in the rebuttal any written title in himself which he may not have pleaded and exhibited. But the statute gives the plaintiff no inquisitorial power to compel the defendant to disclose his title. He may decline under penalty of being ejected by one who has shown title or right of possession in himself, at least sufficient to overcome the defendant's *prima facie* right resulting from actual possession. Possession under claim of title is *prima facie* evidence of *title*. Bare possession is *prima facie* evidence of the *right to possession*. *Ricard v. Williams et al., 7 Wheaton, 59*. The complainant here, in a paragraph distinct from that charging that defendant holds by mesne conveyances from Baldwin, admits the possession, and that the defendant claims to be entitled to the lands.

With regard to the principles regulating tenants in common, I think they have no application to the case in judgment. It is not charged that the defendant claims Jago's interest under the tax deed, who, if the deed had been valid, would have been the tenant in common with Baldwin. Nor is it alleged that Baldwin, owning the land, had conveyed an undivided moiety to plaintiff, and another undivided moiety to defendant, which would have made them tenants in common with each other. As for the tax deed it is not alleged that defendant claims under or through that at all.

A bill of exceptions, filed by the *plaintiff*, brings to our notice the fact that he offered but was not allowed to show that, after Baldwin's trust deed was filed for record, a stranger recovered a judgment against Jago and Baldwin jointly, under which the quarter section of land was sold to parties who afterwards conveyed to Heard the defendant. But the plaintiff did not appeal, having, indeed, no occasion to do so, as the verdict was rendered in his favor. He had already obtained the introduction of illegal evidence which

insured it finally.    Whether the court erred in rejecting the proposed evidence is not before us.    It did not go to the jury at all.

One of the grounds of defendant's motion for a new trial was that the verdict was contrary to the evidence. I think this court can not sustain a verdict rendered upon improper evidence that was *in*, by considering proper evidence (if it be proper) which was *out*.    This would be hopelessly to confuse the distinct functions of the bench and the panel.    A verdict must stand or fall by the evidence the jury had, and not by what it should have had.    If it be tainted with any incompetent evidence, which might have brought the minds of the jury to that conclusion, it must fall.    If the evidence be all good, but insufficient, it must fall likewise, although evidence may have been rejected which was competent, and *might have been* sufficient if admitted.    I see no difference in principle between *making* verdicts for juries, and in sustaining those already made, by leaving out of consideration illegal evidence which may have influenced them, and considering in its place other evidence which they did not have.

The simple question now considered, is, ought the verdict to have been set aside? not what may prove ultimately to be the very right between the parties, on a proper trial, upon a proper record, with proper evidence.    No such trial has been had.    The record is erroneous in that it shows the exceptions to the tax deed to have been overruled.    As a consequence, improper evidence went to the jury, of a nature that *must* have controlled their verdict.    Perhaps proper evidence was excluded, but that we can not determine.    It was *not* a fair trial, on proper issues, with proper evidence.

The argument and remarks, heretofore made, have been directed to show that the *verdict* was erroneous and should not stand as the basis of the judgment.    The case has another aspect.    Does the record show, without the aid of the

verdict, and notwithstanding the error in overruling the exceptions to the clerk's deed, that the *judgment* is right, and could not have been different in view of any case, which might, but for the errors in the record itself, have been made before the jury? I respectfully submit that it does not, for reasons which require a more particular examination than this court has ever heretofore made, of the true reason, scope and limitation of the doctrine, that it is not necessary for either litigant in ejectment to prove title beyond the person under whom both claim, by conveyance, or other modes upon which they respectively rely.

Some of the early New York cases have rested this doctrine on the ground of estoppel. Certainly this can not be done. It confuses all distinction between a lessee and grantee in fee. The old feudal idea of fealty to the landlord and his title never had any application to the alienations of allodial lands; nor to alienations in *fee* of feudal lands after the statute of *quia emptores*, by which the feoffor held, not of his feoffor, but of the chief lord of the fee. The whole title of the feoffor passed out of his control, and there was nothing left in him to protect. Nor can the doctrine be based upon the equitable principle regulating estoppels *in pais*. There is no privity in estate, or otherwise, between two strangers who purchase independently from the same vendor. It can not be said that the act of either so influences the conduct of the other as to make it fraudulent in the former to assert a claim against him, unless one had stood by and seen the other purchase, without giving notice of his claim when it was his duty to speak.

The case of *Jackson on demise of Brown v. Hinman, 10 Johnson, 292*, cited by the court, is based expressly on the ground of estoppel. It is somewhat obscurely reported, but seems to belong to the class of cases in which a *tenant* is not allowed to disclaim the title of the landlord under

whom he held, and set up a title acquired during his posses-sion from another source.

The broad and common sense grasp of Chief Justice MARSHALL's mind could not take in the idea of any estoppel between vendor and purchaser. See *Blight's Lessee v. Rochester*, 7 *Wheaton*, *535*. It is a case which nearly resem-bles this, and the opinion is in direct antagonism with the opin-ion just now delivered here. The world wide reputation of that eminent jurist justifies much deference to his views; and the importance of the question now to be settled for this State, will excuse me in dwelling upon them. The case was an ejectment by the heirs of John Dunlap, against one who held by mesne conveyances, through others, from John Dunlap, who himself had claimed title by descent from an alien, at a time when aliens could not by law transmit inher-itances. There was no doubt of the heirship of plaintiffs nor any doubt that John Dunlap could transmit an inheri-tance to his heirs. But it clearly appeared that John Dunlap never had any title, as it appears here with regard to Baldwin, and it was held that the defendant might show that although he did not deny that he held by mesne convey-ances from John Dunlap, and although he showed no other title. It may be well to remark that there was no proof that John Dunlap had ever been in possesssion, which would have given *prima facie* title to his heirs. In this case the seizin and possession of Baldwin are denied on the record.

The supreme court of the United States, with Marshall, Story and the other distinguished associates who formed the bench in 1822, all concurring, sustained the circuit court of Kentucky in *refusing* the following instruction:

"That if the jury find the defendant obtained possession under James G. Hunter, who obtained possession as the attorney of John Dunlap, or who claimed under an executory agreement with John Dunlap, and that said defendant has

held and occupied under John Dunlap's title, claiming from said Hunter as the attorney of said Dunlap, or under an executory agreement; or has, since he was in possession, acknowledged the title of said Dunlap as that under which he held; that then the defendant is not permitted to impeach or controvert the title of said John Dunlap, by parol evidence that *James* Dunlap was an alien.''

The Chief Justice remarked hypothetically, that *if* the defendant was bound in law to admit a title which had no existence in reality, it is because the ''moral policy'' of the law will not permit him to contest that title on account of his having received a conveyance from Dunlap; but did not apply any such moral policy to the case and emphatically denied that the doctrine of estoppel had any application. The judgment was affirmed, and the defendant succeeded in the suit upon the ground that the ancestor, under whom defendant also held, never had any title whatever, and the plaintiffs could show none, although the defendant deraigned title from no other source. The decision is not based upon any finding that defendant's possession had been so adverse and long continued, as to bar the suit.

In that case too, it is to be noted, that whilst it did appear from the record that Dunlap conveyed to Hunter, and it was alleged and not denied that Hunter conveyed to defendant, it was not shown that Hunter's deed contained any reference to Dunlap's title. This case stands also on the same grounds. It is only alleged that Heard holds under certain *mesne* conveyances and licenses from Baldwin. There may have been twenty of those intermediate aliena- tions between Baldwin and defendant. There was no show- ing that the immediate conveyance to Heard made any reference to Baldwin's title. Upon this point the court, in the case cited, said, speaking of defendant's deed, which did not appear of record, as Heard's does not here: ''Whether it contains any reference to the title of Dunlap

or not, is *not shown.* The defendant then holds, in his own right by a deed of conveyance which purports to pass the legal title, The plaintiffs show no title in themselves, but *allege and prove* that the title under which the defendant claims is derived from their ancestor." "The sole principle on which this claim is founded is, that the defendants must trace his title up to their ancestor and is bound therefore to admit it. But if the deed of the defendants *does not refer to their ancestor,* and the record does not convey this information, the defendant holds in opposition to the title of John Dunlap, or claims to have acquired that title. If he holds under an adversary title his right to contest that of Dunlap is admitted. If he claims under a sale from Dunlap, and Dunlap himself is compelled to aver that he does, then the *plaintiffs themselves assert a title* against this contract." So here, looking only to the record, we find plaintiff himself asserting a title, against one who by his own showing, holds by conveyances from him, under whom the plaintiff claims. In other words he claims under one who could not have maintained the suit against defendant. Is it not obvious that he cannot do that, without showing at least, that defendant's chain of title was, as to him, fraudulent or void, or that his own was superior in time, so as to have divested title out of Baldwin, before the conveyances on defendant's line began?

In the case of *Blight's Lessee,* decisions *per contra,* from Kentucky and New York had been urged upon the court, amongst others the case of *Jackson v. Hinman,* cited here and relied upon by the court in support of its opinion. The court considered them all distinguishable from the case before it in circumstances, *"especially in this material one, that the vendor gave possession to the vendee."* It is not shown here that Baldwin gave possession to Heard or Heard's grantor. Can not one in possession of land by independent but doubtful title, buy his peace?

Can he not get in the bad title of another, without subjecting himself to be ousted by another claimant under the same bad title? or must he thereby subject himself to an inquisitorial examination of his true title by a stranger who has none, not even *prima facie?* Of what value then, is the time-honored common law rule, that a plaintiff in ejectment must succeed on the strength of his own title? It will be utterly frittered away.

It may be useful to show some of the circumstances in which the cases, cited by the court, differed from this.

*Riddle v. Murphy* did not rest on the pleadings. *Both* trains of title were shown in evidence, and it appeared that the plaintiff's was the better of the two.

*Jackson v. Hinman,* already referred to, was a case of like nature. It was shown by the plaintiff, not only that the defendant had a chain of title from the same person, but, *also,* that it was *later* than his own, and *inferior* to it. This is a case in which the doctrine of estoppel is announced, so thoroughly repudiated afterwards by the supreme court of the United States. Perhaps the decision might be sustained on other grounds.

*Fitch v. Baldwin* has no application whatever. It was an action of covenant by vendee against vendor for alleged breach of a covenant of seizin. The deed was made on a compromise, and the court very properly held the vendee estopped from claiming a breach of the covenant on the ground that the title was really in himself.

*Douglas v. Scott* was an equity case in which it was held that the title of complainant was good in itself. Some remarks of the court sustained the view of the law in question which have been here announced by this court, but they were *obiter.* In *Woolfolk, etc., v. Ashley,* all parties claimed under Mary Ashley. This appeared *affirmatively*; and, also, that defendant had *acquired the possession* of the and under title,

*Ward v. McIntosh* was a suit for dower against the husband's vendee, who denied the husband's seizin. It was shown affirmatively and *found* by the trial court, that the husband was *in possession*, claiming title—that he had conveyed in fee to defendant and delivered possession to him; that defendant *acquired possession by that means*, and had ever since retained it; and that he derived *neither title nor possession from any other source.* Dower was allowed on the ground that these things as against defendant were proof of the husband's seizin, and the supreme court sustained it. It was held that under the circumstances there was no error in holding that the husband's vendee was estopped. The court remarked upon the great diversity in the authorities as to the *existence, origin* and *just application* of the rule, which prohibits a grantee in fee from denying the title of his grantor. Some of the cases, it says, deny its application altogether between vendor and vendee, "especially if the grantee *does not receive possession* from the grantor. Others hold that even receiving possession under the grantor is not an estoppel, but a *prima facie admission* of the title and right of the grantor. Others hold that he can only deny the grantor's right when he did not receive possession under the grantor, but in that case he may "buy his peace" without prejudice to his rights.

Recognizing the disagreements amongst the authorities, the supreme court of Ohio concludes upon their right, in this careful manner, "that where one *enters into possession of land* under and by virtue of a conveyance in fee, with *covenants of warranty* from another, and retains that possession, *relying on* the grant or the possession under it, in aid of his title or possession, he cannot deny the title thus acquired, against the grantor and those claiming under him.

The defendant in this case did not come within any of these qualifications, and did deny Baldwin's right.

Speaking upon this vexed question, Chief Justice Marshal

Stafford et al. v. Watson.

remarked in the case of Blight's Lessee that the decisions of one State, though highly to be respected, are not authority in another, especially with respect to land titles.

Three essential requisites to maintain an action of ejectment are laid down in *Daniel v. Lefevor, 19 Ark., 201.* The plaintiff must show by proof or admitted allegations, that he had the *legal estate* in the premises at the commencement of the suit; that he had right of entry, and that defendant was in possession. This is the good old common law rule, and the defendant may stand mute until he does so. He is not contumacious if he declines to display his muniments of title until this is done. A plaintiff who does not bring himself within the rule has no business with the title of his neighbor who holds possession. It is his own folly to have bought land under a void title. In the case in judgment the plaintiff shows no title. If he shows any right of entry it must result from the naked allegation that he and plaintiff both have chain of title from the same void source. But that is a plain *non sequitur.* If we were to concede that the defendant was estopped from denying the right in the common source (Baldwin) it would still remain, that the *older* title must prevail. *Bacon v. Tate, 22 Ark., 531.* The plaintiff must make out his own case, and he does not allege that his is superior in point of time or otherwise, or that defendant has no other title, or that he *entered into possession* under or by virtue of the claim from Baldwin.

If it be settled that the plaintiff in ejectment, can always make a *prima facie* case, by the dry unqualified allegation that he and defendant hold chains of title from the same person, without alleging something to show his own claim to be the better one, the tenant in possession it seems to me will always be in the worse plight. He may have bought it in for peace, and acquired a *damnosa hæreditas*, or acquisition. He will be ejected without the privilege of suing upon the same allegations to recover it back, which he

might well make.  Or the rule in ejectment must be reversed, and he will be driven to set up his own title and prove it, to maintain his possession.

I imagine the true reason, foundation, significance and application of the rule in question is to be found in considering it simply as a rule of evidence, adopted for convenience, and not as a rule of law, except in cases when the peculiar doctrines of estoppel apply as they did in *Fitch v. Baldwin, 17 Johnson, 165,* and as they do between landlord and tenant.  When both parties in the suit rely upon title from the same person, and claim from it, then on the trial it would be a work of supererogation to require either to prove what both admit.  But I think it cannot consistently with principle, be carried into pleadings and relieve the plaintiff from making out a *prima facie* case.  Perhaps a plaintiff *having made the proper averments* might sustain them on trial by showing that he held by a valid chain from the alleged common source, which common source the defendant had admitted, without setting up any independent or adverse title, or prior chain.  But this, if permissible would rest upon the *presumption of fact*, to be considered on trial, that defendant had no such better title.  But the averments cannot be dispensed with without a revolution in the action of ejectment.

I deem it further proper to add, upon the theory that the judgment in this case can be sustained upon the admissions in the pleadings, that if the principle established by the court be correct, the *proceedings* are nevertheless erroneous.  There was a general demurrer to the answer which was not pressed nor disposed of.  It must be considered that the answer was accepted by the plaintiff and the court, as forming a material issue.  It has been held by this court that when parties accept pleadings as sufficient and go to trial upon them, they will be liberally construed to make all issues that might reasonably have been intended.  Defendant had

denied the right and seizin of Baldwin and might well have intended by that to deny that he held or claimed under him. With such an issue supplied, the verdict could not be sustained, even upon the principles of the court.

Or if this cannot be done, then the plea was bad, and should have been disposed of on dismurrer. It devolved on plaintiff to move that, or accept the answer. If the demurrer had been sustained the circuit court could not have given judgment thereupon for the plaintiff, without giving leave to answer over.

This the appellate court now does, without giving him the opportunity of putting in a good one. If the answer made a good defense, there has certainly not been a fair trial on it. If it did not, then the defendant was deluded into a trial upon it, by waiver of the demurrer, and now after a verdict against him on erroneous grounds, this court cannot, I think, sustain the judgment rendered on that verdict, upon the grounds that he had no answer in.

I think the ends of justice would be promoted by reversing the case and remanding it with directions to sustain the exceptions to the clerk's deed, to allow amendments of pleadings, and for further proceedings in accordance with law.

*Addenda.* I think the judgment may be erroneous on another ground. It is alleged that defendant held possession under certain mesné conveyances and *licenses.* Now a license does not convey title, and it is not in consistent with a deed of trust. But until revoked it is a good defense in ejectment. The allegation is very obscure and, fairly considered, does not amount to a charge that defendant claims title under Baldwin. What sort of license is meant, when granted and when to end? Mr. Tyler, in his work on ejectment, says p. 559, "if the defendant went into possession under a license, the *claimant* must show the leave and and license, and that the same has been revoked; and it

must always appear that the right of the defendant was terminated before the day of the demise in the declaration." These things have not been shown.