## FEATHERSTON *v.* TRONE.

## Opinion delivered April 22, 1907.

1. REAL ESTATE BROKER—RULE AGAINST ACTING FOR BOTH PARTIES.—The general rule that a real estate broker can not represent both parties to a transaction is subject to an exception where he acted only as a middle man to bring them together, and nothing was left to his judgment or discretion, or where both parties knew of the double employment and consented thereto. (Page 384.)

2. SAME—COMMISSIONS—FRAUD.—Where a real estate broker, employed to procure a sale or exchange of his principal's land, wilfully attempted to deceive his principal about a material matter coming within the scope of his agency, and while pretending to discharge the duties thereof, the principal, on discovering the deceit, had the right to discharge him and set up his fraud as an absolute defense against any claim for commissions on an exchange subsequently made. (Page 385.)

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; reversed.

*J. A. Rice,* for appellant.

1. A real estate broker who is negotiating a sale or exchange of real property, or otherwise acting in the line of his business, cannot represent both parties to the transaction without their mutual knowledge and consent; and if he attempts to do so, he forfeits all right to any compensation or commission from either. 23 Am. & Eng. Enc. of L. (2 Ed.) 907 and notes, 921-2; Mechem, Agency, § § 66, 67, 598, 643-4; 19 S. W. 268. Under the facts in this case appellees were agents of appellant at the

time negotiations with Smith began; and thereafter they were acting for both appellant and Smith without appellant's consent. 33 Ark. 446; 12 L. R. A. 395.

2. The seller has the right, on discovering the broker's bad faith, to discharge him, and the latter cannot recover compensation. 37 L. Ed. 721; 34 L. Ed. 984; 76 Ark. 395. See also Tiffany on Agency, 142; 50 Am. Rep. 21; 24 Am. Rep. 415; 65 Ga. 512.

*McGill & Lindsey,* for appellees.

Appellant admitted on cross-examination that he knew that Trone represented Smith as well as appellant. His argument and citations do not apply. Upon his own testimony appellant is liable for the commission.

RIDDICK, J. This is an appeal by J. E. Featherston from a judgment against him for $87.50 rendered by the circuit court of Benton County on an appeal from a judgment of a justice of the peace. The judgment was rendered in favor of J. E. Trone and J. M. Jackson for commissions claimed by them for services in bringing about an exchange of land owned by Featherston for town property owned by J. B. Smith.

The facts are that Trone and Jackson were real estate brokers at Bentonville, Arkansas. Featherston owned a farm of 40 acres adjoining the town which he desired to exchange for town property. Knowing Trone was a real estate agent, Featherston informed him that he desired to sell or exchange his farm at a valuation of $6,000 for property in the town of Bentonville. Trone testified on the trial that Featherston asked him what he would charge as a commission for effecting an exchange, and that he replied that his custom, when an exchange of property was effected, was to charge each party half commissions, and that Featherston expressed himself as satisfied with that arrangement. Featherston testified that he listed his land with Trone for sale or exchange, and told Trone to send him a man, and that he would do his trading himself. He further testified that nothing was said about commissions at that time. "I did not," he said, "expect to pay any commission. I told them to send me a buyer, and I would do my own trading and pay no

commission, just like one neighbor would tell another to send him a buyer for his horse and not pay any commission."

At the time of this conversation Trone had on his books for sale or exchange certain real property in the town of Bentonville owned by J. B. Smith. Trone at once informed Smith that he could exchange his town property for the farm of Featherston, and Smith expressed a willingness to make the exchange. A day or two later Trone showed Featherston the Smith property, and told him the price at which it was held. Featherston afterwards told Trone that he would like to get a piece of cheap farm land as well as town property in exchange for his farm, which was a highly improved place near the town. At that time Trone had on his books for sale a small farm owned by Geo. P. Jackson, for which Jackson asked $2,000 net, or $2,150, including fees of the real estate agent. On being informed by Featherston that he desired to get some farm property as well as town property in exchange for his farm, Trone went to Smith and told him of that fact, and said that Smith could buy the Jackson place and put it in the trade with Featherston. Smith replied that the price of the Featherston place, $6,000, was too high, and asked Trone at what price he could put the Jackson place in the trade. Trone said that the Jackson place could be bought for $2,150, and if Featherston liked it he might be willing to take it at $2,500 in part exchange for his place. This was the testimony of the plaintiff. On the other hand, there was testimony of witnesses for the defendant tending to show that Trone, when he ascertained that Featherston wanted a farm, went to Smith, proposed to him that he buy the Jackson place at $2,000 and put it in the Featherston deal at $2,500, and asked Smith if he objected to making $500 in that way; that, upon being assured by Smith that he had no objections, Trone then went to Featherston and told him that Smith owned the Jackson farm, that he rated it at $2,500, and would put it in the exchange at that valuation; that Featherston thereupon went out to see the Jackson place and found that it did not suit him. He also ascertained from Smith and Jackson that Smith did not own the Jackson place, that it was owned by Geo. P. Jackson, who held it for sale at two thousand dollars. On ascertaining these facts, Featherston came to the con-

clusion that Trone was not dealing fairly with him; that he was trying to aid Smith to his disadvantage. He thereupon notified him that he would have no further dealings with him. A few days later he and Smith made the trade, he exchanging his farm for town property owned by Smith and $500 in cash.

"The general rule is that a real estate broker or agent who is negotiating a sale of property or otherwise acting in the usual line of his business cannot represent both parties to the transaction without their mutual knowledge and consent, and if he attempts to do so he forfeits all rights to any compensation or commission from either." 23 Am. & Eng. Enc. Law, 907; *Taylor v. Godbold,* 76 Ark. 395. But we do not think that any prejudice resulted to the defendant in this case from the refusal of the court to give an instruction to that effect, for the reason that there does not seem to be any conflict in the evidence on that point. The plaintiff Trone testified that he informed Featherston that if he effected an exchange of his property he would charge each of the parties to the exchange one-half of the fees. There were other circumstances in proof tending to show that Featherston had notice of the fact that Trone was assuming to act for Smith and him both in bringing about the exchange. Featherston does not deny that he had such notice, and the court was therefore justified in treating such fact as established. In truth, the testimony of Featherston himself tends to show that Trone was employed by him merely to find some owner of town property willing to exchange it for his farm with the distinct understanding that Featherston would do his own trading without any assistance from Trone. The rule that forbids the agent from acting for both parties is not so strict when he acts only as a medium of communication between the parties, simply to bring them together and where nothing is left to his judgment or discretion, as in those cases where he represents one of the parties in making the sale, and where such party has the right to rely on his unbiased judgment and discretion. 23 Am. & Eng. Enc. Law (2d Ed.) 907; Rapalje on Real Estate Brokers, § 23; *Wadsworth v. Adams,* 138 U. S. 380; *Shaeffer v. Blair,* 149 U. S. 248.

But, even though Featherston knew that Trone was acting both for Smith and himself in making the exchange, that did not

relieve Trone of the obligation to deal fairly with Featherston; and if he attempted fraudulently to mislead Featherston into taking in exchange for his property other property at a valuation greater than was placed thereon by the owner, this would justify Featherston in breaking off dealings through him and discharging him, and would deprive him of the right to demand commissions for the exchange of property subsequently made by Featherston with Smith. *Taylor* v. *Godbold,* 76 Ark. 395. Trone was acting as an intermediary for both of these parties with their knowledge and consent. Under these circumstances neither the fact that when he ascertained that Featherston desired to get some farm property as well as town property in exchange for his farm he informed Smith and suggested to him that he could purchase the Jackson place and put that in the trade with Featherston, nor the further fact that when Smith replied that $6,000 was too much to pay for the Featherston farm and asked Trone at what valuation the Jackson farm could be put in the trade Trone replied that if Featherston liked the place he might be willing to take it in the exchange at a valuation of twenty-five hundred dollars—neither of these facts to our minds show conclusively that Trone was attempting to perpetrate a fraud on Featherston. He was trying to bring about an exchange of property between these parties. As Featherston wanted both town and farm property in exchange for his farm, and as Smith had town property that he desired to exchange, but no farm property, it was only natural that Trone, who was trying to arrange a sale between them, should suggest that he purchase a farm of the kind that Featherston desired. When Smith said that the price of the Featherston place was too high, it was consistent with honesty on the part of Trone for him to suggest that if the Jackson place suited Featherston he might be willing to take it in the exchange at $2,500, for Featherston may have preferred to have taken it at that valuation in exchange for property that he desired to sell rather than to pay a less amount for it in currency.

But, as before stated, there was evidence on the part of the defendant that Trone, when he ascertained that Featherston wanted to buy a farm, went to Smith and proposed to Smith that he buy the Jackson farm, which Trone had for sale for

$2,000, and exchange it to Featherston at $2,500, and thus make $500, and that, when Smith agreed to this, provided Featherston would accept it at that valuation, Trone went to Featherston and told him that Smith owned the Jackson place, and rated it at $2,500, and would put it in the trade at that valuation. This evidence tends to show that Trone, after being employed by Featherston to make the exchange, attempted to mislead him in reference to a material matter affecting the exchange which Trone was proposing that he and Smith should make. It tends to show that he endeavored to make Featherston believe that the owner of the Jackson farm rated it at a valuation of $2,500, so that Featherston would take it at that price, whereas he knew that the owner was offering to sell it for much less. If these facts were true, and Trone attempted wilfully to mislead Featherston in that way, we are of the opinion that Featherston was justified in discharging him as agent, and that Trone forfeited his right to claim from Featherston pay for his services. *Taylor* v. *Godbold,* 76 Ark. 395; 23 Am. & Eng. Enc. Law (2d Ed.) 907; *Rapalje,* Real Estate Brokers, § 60; *Wadsworth* v. *Adams,* 138 U. S. 380.

But, as Featherston did not get the Jackson place, and as he was not injured by the representations made by Trone in reference thereto, the circuit judge was of the opinion that these representations had no bearing on the case, and he refused to submit to the jury the question whether Trone attempted wilfully to mislead Featherston in reference to the value of the Jackson place and to induce him to take it in exchange from Smith at a greater valuation than the owner placed on it. But the question is not whether Featherston was actually misled and injured by the conduct of Trone, but whether Trone, after being employed by Featherston to effect an exchange of his property for other property, was guilty of wilfully attempting to deceive his principal about a material matter coming within the scope of his agency, and while pretending to discharge the duties thereof. If he did, Featherston, on discovering the deceit, had the right to discharge him and to set up his fraud as an absolute defense against any claim for commissions on the exchange which he afterwards made. If the law were otherwise, the agent, when discovered in the act of attempting to defraud

his principal by inducing him to accept property at an excessive value, could say, "No, I tried to defraud you; but if you go ahead and make the trade, you must still pay me for my services, because you discovered my fraud in time to avoid injury from it." But the law is not so considerate as that to a faithless real estate agent, and fraud or intentional deception perpetrated upon his principal in reference to any material matters in the line of his employment will cut off his right to commissions against such principal. *Taylor* v. *Godbold,* 76 Ark. 395; 23 Am. & Eng. Enc. Law (2nd Ed.) 907; Rapalje on Real Estate Brokers, § 60.

The instructions of the court told the jury that if the defendant listed his lands with the plaintiffs for sale or exchange, and they found him a purchaser with whom he afterwards exchanged lands, the plaintiffs were entitled to their commissions. This was virtually an instruction to find for plaintiffs, as it was not disputed that he listed his lands with plaintiffs, and that they found him a party with whom he made an exchange of lands. We think that plaintiffs were clearly entitled to their commissions unless, as claimed by defendant, they attempted wilfully to mislead him about a material matter connected with the transaction. The evidence on that point was conflicting, and we are of the opinion it should have been submitted to the jury, and that the trial judge erred in refusing to do so.

Judgment reversed and cause remanded for a new trial.