GILLETTE & ENGLISH *v.* CARROLL & HOGAN.

Opinion delivered March 12, 1923.

1. BROKERS—RIGHT TO COMMISSION.—Where there was testimony tending to prove that defendants promised to pay a broker's commission to plaintiffs if the latter's subagent was instrumental in procuring an exchange of lands, such a contract would be binding though the subagent represented the other party to the exchange; but in such case defendants were entitled to know who their agent was and who was the procuring cause of the exchange; and if there was a divided allegiance, they were entitled to know which principal the agent professed to represent.

2. BROKERS.—AGENT REPRESENTING BOTH PARTIES—COMPENSATION.— An agent who represents an adversary principal also can recover compensation only when there has been a full disclosure to each of all the facts.

3. BROKERS—COMMISSION—INSTRUCTION.—In an action for a broker's commission, an instruction that plaintiffs were not entitled to a commission if defendants made the sale unless plaintiffs, by finding and introducing a purchaser to whom the sale was made, were the procuring cause of the sale, was properly refused where it left out of account the contention of plaintiffs that a commission was to be paid, not merely if plaintiffs found and introduced a purchaser to whom a sale was made, but also if one of the subagents found a purchaser with whom defendants traded.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; reversed.

*McGill & McGill,* for appellant.

Owner had right to make sale of property unless made to purchaser procured by brokers. *Harris & White* v. *Stone,* 137 Ark. 23; *McCombs* v. *Moss,* 121 Ark. 533; *Hardwick* v. *Marsh,* 96 Ark. 23; *Nerakorick* v. *Union*

*Trust Co.,* 89 Ark. 412; *Hill* v. *Jebb,* 55 Ark. 574; *English* v. *Wm. George Co.* (Texas) 117 S. W. 996. Instruction No. 2, only one presenting appellant's theory of case, should have been given. Broker entitled to commission if "procuring cause", but not where agent of purchaser effected sale. *Scott* v. *Patterson,* 53 Ark. 49; *Hinton* v. *Marshall,* 76 Ark. 375; *Pinkerton* v. *Hudson,* 87 Ark. 506; *Branche* v. *Morse,* 85 Ark. 462; *Stilwell* v. *Lally,* 89 Ark. 195; *Mow* v. *Irwin,* 89 Ark. 289; *Porter* v. *Hall,* 97 Ark. 23; *Hodges* v. *Boyley,* 102 Ark. 200; *Simpson* v. *Blewitt,* 110 Ark. 87; *Meyer* v. *Holland,* 116 Ark. 271; *Horton* v. *Beall,* 116 Ark. 273; *Brannon* v. *Poole,* 142 Ark. 48. A broker cannot act for both parties without disclosing fact to principals. *Murphy* v. *Willis,* 143 Ark. 1; *Featherstone* v. *Stone,* 82 Ark. 381; *Taylor* v. *Godbold,* 76 Ark. 395. Utmost good faith required. *Taylor* v. *Godbold,* 76 Ark. 395; *Dallas* v. *Moseley,* 150 Ark. 210; *Wright* v. *Burnett,* 150 Ark. 154. Right to commission for sale effected by another broker or third person. *Nance* v. *Smyth* (Tenn.), 99 S. W. 698. *Hurxthal* v. *Dalby* (Mo.), 153 S. W. 1066, 9 C. J. 914; *Rich* v. *Robertson* (Conn.), 7 A. L. R. 81.

*Lee Seamster,* for appellee.

Appellant cannot complain of court's failure to instruct on point not having requested a correct instruction. *Brewitt* v. *State,* 150 Ark. 279; *Wharton* v. *Jackson,* 87 Ark. 528; *Holmes* v. *Bluff City Lbr. Co.,* 97 Ark. 180; *Hayes* v. *State,* 129 Ark. 325; *Gunter* v. *Williams,* 137 Ark. 530. Question of lack of good faith not raised here first time. *Matlock* v. *Stone,* 77 Ark. 95. Exceptions not argued abandoned. *Harris* v. *Smith,* 133 Ark. 250; *Holland* v. *Doke,* 135 Ark. 372; *Taylor* v. *Walker,* 149 Ark. 134.

SMITH, J. Gillette and English owned a ranch in the State of Oklahoma, with certain personal property thereon, which they decided to sell or exchange, and with that purpose in view they prepared a circular letter descriptive of their property, which they mailed to a large

number of real estate agents. One of these letters was received by Carroll and Hogan, partners as Carroll & Hogan, residing at Bentonville, in this State, and engaged there in the real estate business.

Gillette represented himself and English in the transaction out of which this litigation arose, and Carroll represented himself and Hogan.

Carroll testified that he and Gillette met and discussed the letter, and Gillette listed the ranch with him to be sold or exchanged, and he told Gillette that he would list the ranch with a number of subagents who were cooperating with him in selling and in exchanging lands, and that if he, or any of those subagents, negotiated a sale or an exchange of the ranch, he would expect a commission of two and one-half per cent., and Gillette assented and agreed to pay the commission.

Among the other real estate brokers notified by Carroll of this arrangement was R. C. Leeper, of Springdale, Arkansas, who agreed to find a purchaser or some one with whom an exchange could be made, and Carroll accompanied Gillette to Springdale and introduced him to Leeper as a man who would negotiate a sale or exchange, and some time thereafter, and pursuant to this understanding, Leeper found one McClinton, with whom Gillette made an exchange for the property of McClinton, and a commission is claimed, on the theory that, by virtue of the introduction of Gillette to Leeper, Carroll & Hogan thereby became the procuring cause of any sale or exchange of the ranch to any customer Leeper might find and himself represent in making a purchase or exchange for the ranch, although Carroll & Hogan might have nothing else to do towards bringing about the sale or exchange. The theory of the case was that Leeper could be, and was to be, the agent of Carroll & Hogan to procure a purchaser for Gillette, and also to be the agent of such purchaser in making an exchange with Gillette.

Shortly before the consummation of the exchange with McClinton, Carroll wrote to Gillette that if he (Gillette) traded with McClinton, a commission would be expected on the theory stated above. The deal with McClinton was closed, and Gillette refused to pay a commission, and this suit was brought to recover it, and there was a judgment as prayed, from which is this appeal.

Carroll did not claim to have an exclusive agency, or any agency for any given time, and the right of Gillette to make the sale was not questioned. The insistence is that Gillette promised to pay a commission if Carroll & Hogan themselves, or if they, through one of their sub-agents, negotiated a sale or an exchange; and this latter thing they did through Leeper.

The court submitted the case to the jury under instructions to find for the plaintiffs if the facts were found to be as contended by Carroll, and we think no error was committed in so doing, as one may agree to pay commissions for services of almost any character. At least, there is no legal objection to his doing so. It is insisted, however, that the instructions did not properly present the theory of Gillette's defense, and we think that contention is well taken.

The testimony shows that Carroll accompanied Gillette to Springdale and introduced Leeper and Gillette, and Carroll endeavored to exchange the ranch for a hotel owned by a customer of Leeper, but this deal failed, and thereafter Carroll admittedly did nothing further towards selling or exchanging the ranch, except in so far as Leeper represented the firm of which Carroll was a member.

Leeper testified on behalf of the plaintiffs, and it is quite obvious from a reading of his testimony that he was highly friendly to the plaintiffs. He testified that he told Gillette that Carroll would expect a commission if the McClinton deal was consummated, yet he admitted that in all his negotiations with Gillette he was representing McClinton, and that Gillette was without representa-

ion. He further testified that the McClinton deal hung fire for a period of several months, and finally McClinton himself took charge of the negotiations, and thereafter no one acted for either Gillette or McClinton, but when the exchange between them was closed McClinton paid him the agent's commission agreed upon.

Gillette testified that Carroll was never at any time his agent, and had no more right to claim a commission than any one of the other hundred or more real estate brokers to whom he sent his circular letter, which was nothing more than an inquiry whether any of the persons to whom the circular was sent had a customer who might become interested in purchasing or trading for the ranch. He testified that, for a period of several months, negotiations proceeded between himself and Leeper, and, so far from ever being advised that Leeper was his agent and was attempting to procure him a purchaser, he at all times regarded Leeper as his adversary, with whom he was trading at arm's length. He denied that Leeper told him that Carroll was expecting a commission if the McClinton deal went through. He admitted receiving the letter from Carroll & Hogan in which they stated they would expect a commission if the McClinton deal was made, but he dismissed it from consideration on the ground that there was no agreement to support the claim.

An instruction numbered 2 was asked by the defendants, which, in our opinion, should have been given, but which the court refused. It reads as follows:

"If you find from the evidence that defendants mailed a description of their property to plaintiffs for sale or exchange, and that the plaintiffs thereupon made out copies of such description and mailed them to other real estate agents in Benton County and other counties, and, among others, R. C. Leeper, a real estate agent at Springdale, Arkansas, for the purpose of finding other agent who might have property of others for sale or exchange and to enable them in that way to exchange defendant's property through a deal with such other real

estate agents for property which they might have for exchange, in which case each agent would collect the commission from his own client, and that plaintiffs explained this arrangement to the defendants, and thereafter said Leeper notified plaintiffs that he had certain property of one Hart in Springdale for exchange, and that plaintiffs thereupon took defendant, Gillette, to Springdale for the purpose of endeavoring to make such exchange, and introduced him to Leeper, and that plaintiffs, then representing the defendants, endeavored to make an exchange of their property, but that the sale was never consummated, and that Leeper then told Gillette he would endeavor to get other property for exchange for his ranch, and afterwards notified Gillette that he had the property of one McClinton for exchange for other property, and to come down to Springdale, and that Gillette went down to Sprindale, and Leeper introduced him to McClinton and entered into negotiations with him as McClinton's agent for the exchange of McClinton's property for the ranch of defendants, and that Leeper and McClinton finally carried through a deal with Gillette for the ranch of defendants; that neither Leeper nor plaintiffs notified defendants that plaintiffs were having anything to do with the negotiations for said deal, and that plaintiffs did not, in fact, do or offer to do anything whatever toward bringing about or procuring the exchange for McClinton's property, but only kept informed through Leeper of the progress of the deal, of which fact defendants were not notified, then I charge you that plaintiffs could not be considered in law as the procuring cause of the exchange which was finally consummated by Gillette himself with Leeper and McClinton, and plaintiffs would not be entitled to a commission, and you will find for the defendants.''

This instruction is open to the objection that it is rather long, but it is not at all obscure, and is a concrete statement of the defendants' contention, and we think should have been given.

It is true Leeper's testimony connects with that of Carroll and corroborates Carroll's contention that a commission was promised and would be expected if he (Leeper) was instrumental in closing the McClinton deal; and we know of no legal reason why a property owner should not be held bound by an agreement of that character, if he made it.

But this instruction declares the law to be that Gillette was entitled to know who was assuming to act for him, or who his agents were, and that he would not be bound unless he was so advised.

Here, according to plaintiffs' contention, Leeper was acting in a dual capacity. He was McClinton's agent, without question, and, according to Leeper's own testimony, was assuming to act for no one else. As such, Leeper no doubt talked up McClinton's property, and talked down that of Gillette. Certainly loyalty to McClinton required him to endeavor to induce Gillette to make the concessions necessary to get the parties together on a trade. As we have said, Gillette had the legal right to contract to pay a commission for the services of having an adversary in a trade produced with whom he might make a trade, and under the case of *Meyer* v. *Holland*, 116 Ark. 271, a person is liable who does so contract when a purchaser is produced.

But, we say again, one is entitled to know who his agent is, and who is the procuring cause in a sale or an exchange of property, and, if there is a divided allegiance, he is also entitled to know which principal the agent is professing to serve.

The law does not look with favor upon contracts of agency where one agent assumed to represent the adversary principal in a contract of any kind, and only permits an agent who has done so to recover his compensation for such services when there has been a full disclosure to each principal of all the facts. *Murphy* v. *Willis*, 143 Ark. 1; *Featherston* v. *Trone*, 82 Ark. 381; *Taylor* v. *Godbold*, 76 Ark. 395.

We conclude therefore that the instruction set out above should have been given.

An instruction numbered 1 was requested by the defendants, which reads as follows:

"If you find from the evidence that defendants listed their ranch with plaintiffs for sale or exchange, this would not preclude the defendants from making a sale or exchange of the property themselves, and they would not be liable to plaintiffs for a commission if they made such sale, unless plaintiffs, by finding and introducing a purchaser to whom the sale was made, were the procuring cause of the sale."

This instruction would be a correct declaration of the law except for the fact that it leaves out of account the contention of the plaintiffs that a commission was to be paid, not merely if plaintiffs found and introduced a purchaser to whom a sale was made, but a commission was also to be paid if one of plaintiffs' subagents found a purchaser with whom defendants traded, and for that reason it was properly refused.

For the error in refusing to give instruction No. 2, set out above, the judgment is reversed and the cause remanded.