ROGERS VS. LOCKETT.

AGENTS: *What purchase by, fraudulent.*

  An agent cannot become the purchaser of property confided to his care ; a purchase made under such circumstances carries fraud upon its face.

SAME: *Where principal's title defective.*

  An agent, discovering a defect in the title of the land of his principal in the course of his agency in relation thereto, cannot misuse his discovery to acquire a title thereto for himself.

APPEAL from *Arkansas* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge.

*A. H. Garland,* for appellee.

SEARLE, J. The appellant brought his complaint against the appellee in the Arkansas county circuit court, to the fall term thereof, 1870, for the possession of certain lands, the same being a farm situated in Arkansas county.

The complaint was originally brought on the law side of the court ; afterwards, upon motion of the appellee, equitable issues being presented by his answer, the cause was transferred to the equity side of the court. The appellant replied. The issues were tried and a decree rendered in favor of the appellee, from which this appeal was taken.

The appellant in his original complaint alleges that he is the owner, and entitled to the possession of the farm in controversy, and that the appellee holds possession, etc. He furthur alleges that after the transfer of the cause to the equity side of the court, he acquired title to the farm by purchase thereof, at an administrator's sale, from T. J. Atwood, as administrator of the estate of Renn and Harris, on the 15th day of February, 1869, and in connection with his deposi-

tion, he exhibits the administrator's deeds in evidence of his title.

The appellee answered, admitting that the appellant purchased the farm as alleged by him, but denying that such purchase vested a valid title in him; and in support of this denial he alleges, substantially, the following facts: That he purchased the farm a long time previous to the administrator's sale, from Harris, in his life time, he being the owner thereof, and received a deed therefor; that, by mistake, the property was improperly described in said deed. That in 1867, he contracted with appellent to go upon the farm as his tenant, to cultivate it, and as his agent to manage his affairs generally; that he accordingly acted as his agent and tenant during the years 1867 and 1868; that he remained upon the farm during the year 1869, and until the spring of 1870, when he was dispossessed by legal proceedings; that while he was in possession and acting as his tenant, he procured an administration to be had upon the estates of Renn and Harris (Harris being the party from whom he purchased), long after their decease, bought up long standing and fraudulent claims against their estates, and that the property was sold by order of the probate court to satisfy said claims, and was purchased by the appellant.

The appellant, in his reply to appellee's answer, admitted his agency and tenancy during the years 1867 and 1868, and alleged that the claims that were bought up against the estates of Renn and Harris were probated and just; that the administration was not had by his procurement; that when he purchased the property, he was not appellee's agent and tenant, and he prays that the deed from Harris to Lockett be cancelled, etc.

The pleadings and evidence in this case, on both sides, but especially on the side of the appellee, are very meagre and

unsatisfactory, and it is difficult to discover the right in the controversy, and justly and understandingly dispose of the issues presented.

The deed of Harris to Lockett was not exhibited in connection with Lockett's answer or evidence, nor is it shown by the evidence that any mistake was made in the description of the land in the deed. We presume, therefore, that the issues in relation to the conveyance of Harris to Lockett, and the mis-description in the deed were abandoned in the trial. Nevertheless, the appellant could not depend upon the weakness of his adversaries' title; it was incumbent upon him to establish his own, in order to recover. The issue controverted in the evidence chiefly was, as to whether or not the appellant acquired a valid title to the property in question by his purchase at the administrator's sale, without any reference to the transactions between Lockett and Harris in his lifetime, in relation to the property, and the determination of this issue depends upon the relations in which the appellant stood to the appellee, as his agent, etc., at and before the time of appellant's purchase.

It is well settled that an agent or trustee cannot become the purchaser of the property confided to his care; a purchase made under such circumstances carries fraud on its face. *White v. Ward et al.,* 26 Ark., 445. Again, an agent discovering a defect in the title of the land of his principal, in the course of his agency in relation thereto, cannot misuse his discovery to acquire a title thereto for himself. *Ringo et al. v. Burns et al.,* 10 Pet., 279.

Now it is urged by appellee's counsel that appellant's transactions relative to the purchase of this property at the administrator's sale came within the reason of the rules laid down in the above cited authorities, and that his purchase therefore gave him no valid title. This argument, we think, has but little foundation in the evidence.

In relation to the issue under consideration, the facts, as they appear from the testimony, are as follows: In January, 1869, Lockett sent a letter to Rogers by the hand of one Bass, in which he informed Rogers that Bass was his agent, etc., and requested him to turn the farm, stock, utensils, etc., over to Bass as such. Accordingly, two days thereafter, Rogers did turn the property over to Bass. By permission of Bass, Rogers remained upon the place. Three or four days after he turned the property over to Bass, he determined to keep possession of the farm, stating as his reason therefor, that "he had claims against the estates of Renn and Harris," and that the place belonged to said estates. On the 15th of February following, he purchased the place at administrator's sale, as alleged in the pleadings, and remained in possession until the spring of 1870. It further appears, that the administration had upon the estates of Renn and Harris was not procured by Rogers, and the claims against the estates had been probated, and were just.

Now it is evident, that on his receiving the letter from Lockett, Roger's agency, at least, ceased. As to whether his tenancy ceased also we think matters but little in the disposition of this case. His purchase of the farm, then, on the 15th of February, 1869, was when he was not Lockett's agent. The evidence going to show that Rogers, previous to his receiving Lockett's letter, knew of the supposed defect in his principal's title, is very unsatisfactory; nor can we know from the record, whether Rogers became interested in the claims against the estate of Renn and Harris before or after his agency was terminated. The presumption is, we think, that it was after.

The evidence failing to show sufficiently that Rogers, during his agency, acted in bad faith toward his principal, Lockett, in regard to his purchase of the farm in question, we

are of the opinion that the decree rendered against him in the court below was without sufficient foundation in evidence to sustain it.

The decree, therefore, must be reversed, and the cause re- manded, with instructions to the court below to try the same anew; and also, to permit the parties, if they should desire so to do, to amend their pleadings so as to present more clearly the issues in relation to the conveyance from Harris to Lock- ett, and the description in said conveyance, and also to intro- duce additional evidence.