## EICKHOFF *v.* SCOTT.

### Opinion delivered December 2, 1918.

1. QUIETING TITLE—COMMON SOURCE OF TITLE.—The rule that in an adversary suit plaintiff in a suit to quiet title must recover on the strength of his own title and not on the weakness of the defendant's has no application where the parties deraign title from a common source, in which case the one must prevail who has the superior equity.

2. DEEDS — QUITCLAIM DEED — INTEREST TRANSFERRED.—Where the grantor in a quitclaim deed had no title to the lots mentioned therein, the grantee could acquire no title thereby.

3. TAXATION — TAX TITLE — INNOCENT PURCHASER.—One who purchases land with record notice that a certificate of tax purchase is outstanding is not an innocent purchaser.

4. TAXATION—LIEN FOR TAXES.—One who having color of title pays the taxes on land will be entitled to a lien for the amount thereof with interest as against the owner of the land.

5. TRUST—SUFFICIENCY OF EVIDENCE.—The requirement of clear and convincing evidence to establish a parol trust is not met where only two witnesses testify and their evidence is conflicting and neither witness has been impeached.

6. TRUST—PAROL EVIDENCE.—That plaintiff purchased tax certificates in his own name to be held in trust for himself and defendant cannot be established by oral evidence.

7. TAXATION—ESTOPPEL TO PURCHASE AT TAX SALE.—That one had purchased land under execution sale did not estop him from claiming under his purchase of outstanding tax sales certificates on redemption by the owner from the execution sale.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; reversed.

*Will Akers* and *J. C. Marshall*, for appellants.

1. The main objection to appellant's title is that the delinquent list for taxes of 1893 does not contain the caption set out in Kirby's Digest § 7086, although it contains the notice of sale as prescribed. The section requires the list and notice to be recorded but not the caption. 55 Ark. 218; 34 Fed. 701; 140 U. S. 634. But if the caption was required to be recorded failure to do so would not vitiate the sale as no defect is fatal unless injurious to the owner. 91 Ark. 117. See also 22 *Id.* 556; 30 *Id.* 732; 81 *Id.* 319.

2. The failure to levy municipal taxes did not vitiate the sale. Const., Art. 12, § 4; 30 Ark. 435; Kirby's Digest, §§ 6894, 7020, 6895, 5500, 7595; 100 Ark. 488; 130 *Id.* 329.

3. The contention that Eickhoff agreed verbally to divide with Scott is untenable. It was not proven. But if proven, such a trust would be void. 47 Cent. Dig. 377; 77 N. W. 771; 103 *Id.* 181.

4. Both parties claim through purchase from John Scott. Appellant's title is prior in time and Winn and his grantees had notice. The assignments of the tax certificates passed title to Eickhoff. 37 Ark. 195; Kirby's Digest, § 7093.

5. Defendant under Kirby's Digest, § 7105, has no standing to question the tax sales because they fail to show title at the time of sale and payment of all taxes

due.  99 Ark. 137; 74 *Id.* 338; 84 *Id.* 1; 130 *Id.* 301; 199 S. W. 89, etc.

*E. S. Carter* and *R. E. Wiley,* for appellees.

1.   The collector failed to make a proper return to the delinquent list of real estate for 1893 and the clerk failed to publish and record a list of the lands and notice of sale.  Kirby's Digest, § 7085-6.  There was no caption to the list.  The sale was void.

2.   The quorum court failed to levy municipal taxes for 1893.  Kirby's Digest, § 1499; 100 Ark. 488.  See also Kirby's Digest, § § 6893-4-5, 1499.

3.   Defendants had title to the lands.  Kirby's Digest, § 7105; 99 Ark. 137.  Defendants were in possession and enclosed the lots and made improvements.  The decree below on the whole case is right and should be affirmed.

HUMPHREYS, J.  The husband and father of appellants, George Eickhoff, who is now dead, instituted this suit in the Pulaski Chancery Court on March 20, 1913, against appellees, to cancel their title to lots 1 and 4, block 1, Argenta, Arkansas.  George Eickhoff, through whom appellants claim, based his title to said lots on tax deeds procured by him on February 15, 1913, upon presentation to the county clerk of tax certificates which had been issued to John Scott in 1894 at a tax sale for the non-payment of taxes on said lots for 1893.

Appellees answered, attacking the validity of the tax forfeiture and sale under which the certificates of purchase were issued to John Scott, and setting up title to said lots in O. H. Winn, under quit claim deed from D. F. Scott and wife.  The cause was heard by the court upon the pleadings, depositions and record evidence, upon which a decree was rendered dismissing appellants' bill with prejudice.  From the decree of dismissal, an appeal has been prosecuted to this court.

The lots in question were sold for the taxes of 1893, in 1894, and purchased by John Scott.  John Scott died on September 7, 1901.  His administrator assigned the

certificate of purchase to W. R. Scott on November 1, 1901. W. R. Scott, Lottie N. Scott and Cora B. Melgner, only heirs of John Scott, deceased, conveyed said lots to D. F. Scott on November 15, 1901. W. R. Scott assigned said tax certificates of purchase to D. F. Scott on November 11, 1901. D. F. Scott assigned the tax certificates for said lots to George Eickhoff, the husband and father of appellants, on the 20th day of April, 1903. George Eickhoff then paid all the taxes on the lots from 1903 to 1912, inclusive. George Eickhoff presented his certificates of purchase to the county clerk and obtained tax deeds for them on February 15, 1913.

D. F. Scott and wife executed a quit claim deed for said lots to O. H. Winn on October 22, 1912, and Winn paid the taxes for the years 1913, 1914 and 1917. Winn thereafter conveyed an interest in the lots to Black, and Black to Carter; but Carter conveyed it back to Black and Black back to Winn. After Winn procured the quit claim deed from D. F. Scott, the lots were sold under execution against Winn and purchased by George Eickhoff. Winn subsequently redeemed the lots from the execution sale. As far as ascertainable from the abstract introduced in evidence, H. S. Ellis was the owner of said lot 1 and U. M. Rose owner of lot 4 at the time of the forfeiture for the non-payment of taxes. There was other evidence in the case relative to attempts to pay taxes by the respective parties, touching upon the possession of the lots after the institution of the suit, and a failure of the officers to comply with the statutes concerning tax forfeitures and sales thereunder, but we deem it unnecessary to set out those facts as we regard them immaterial to the real issue to be determined in this case.

It is apparent from the record made in this case that appellants and appellees trace their respective titles to John Scott. Appellees contend that appellants' tax title is void because the recorded delinquent list for taxes of 1893 did not contain the caption set out in section 7086 of Kirby's Digest. It is said that the caption is an integral part of the notice required. It is also insisted that

the tax title of appellants is void because the quorum court failed to levy the municipal taxes which were assessed and extended against the lots for that year. We deem it unnecessary to discuss either reason assigned as invalidating the tax title because both appellants and appellees trace their respective titles to this common source. Appellees are not in a position to attack appellants' tax title because they trace their title to the same source, and an attack upon appellants' title is in effect an attack on the source of their own title. It is true, in an adversary suit, that the plaintiff must recover on the strength of his own title and not the weakness of the defendant's title. *Knauff* v. *National Cooperage and Woodenware Co.,* 99 Ark. 137, and cases cited therein. This rule is applicable where the parties claim title from independent sources, and has no application in cases where the parties trace their respective titles to a common source. Where parties trace their title to a common source, the one must prevail who has the superior equity. This court said in the case of *Stafford et al.* v. *Watson,* 41 Ark. 17, "No doubt the tax deed standing at the head of the plaintiff's claim of title is bad, if the defendant is in a position to assail it. But it seems to be well established that where the source of title is identical, and the parties have no other title to rely upon, it is not permitted to either go behind the person from whom they hold, or show that his claim is not good. Both parties claiming under the same right, the plaintiff was not bound to trace back his title beyond the common origin, unless the defendant showed some title in himself *aliunde.*" This doctrine was affirmed in the case of *Wood* v. *Freeman-Smith Lumber Co.,* 109 Ark. 499. Appellants have the superior equity in the case at bar because nine years before D. F. Scott conveyed the lots to O. H. Winn he had assigned all the interest he owned in the lots to George Eickhoff, husband and father of appellants. D. F. Scott had no interest in the lots whatever at the time he executed a quit claim deed to Winn, and Winn could acquire no greater title by purchase from D. F.

Scott than Scott had. The record disclosed that the tax certificates of purchase for said lots were outstanding; that the taxes were paid by the Scotts until 1903 and thereafter until, and including, 1912, by George Eickhoff. This was sufficient notice to put Winn on inquiry as to who held the tax certificates of purchase, and he must have known that the holder of the tax certificates of purchase was entitled to deeds upon the presentation of the same to the county clerk, so he can not be regarded as an innocent purchaser of the lots from D. F. Scott. The transfers of the property by O. H. Winn after he obtained the quit claim deed thereto from D. F. Scott, and the transfers by subsequent grantees back to him, the sale thereof under execution against him and the purchase by George Eickhoff under the execution sale and the redemption from said execution sale by O. H. Winn left the title to the property just as it was before the subsequent transfers and execution sale. His acts of ownership after the institution of this suit could not affect the title. It appears that Winn paid the taxes for the years 1913, 1914 and 1917, claiming under quit claim deed from D. F. Scott. This constitutes an equity in his favor but not a superior equity to the interest obtained by George Eickhoff by virtue of the tax sales' certificates in 1903. Winn should be given a lien on the lots for the amount of taxes paid on them, together with interest from the time he paid the taxes.

For the error indicated, the decree is reversed and the cause remanded with directions to ascertain the amount of taxes paid on said lots by Winn for the years 1913, 1914 and 1917, with interest thereon, and to render a decree in accordance with this opinion.

HUMPHREYS, J., (on rehearing). Our attention has again been called to this case by petition for rehearing. Appellee insists that he not only has title from D. F. Scott, but that he has a deed from the county clerk, based upon a certificate of purchase by A. M. Eastman upon a forfeiture for the non-payment of taxes by H. S.

Ellis. It is said that this deed was made a part of the record in this case. We have found such a deed on pages 57 and 58 of the transcript in the record, but it covers lot 2 in block 1 in Argenta, Arkansas. We have been unable to find a deed from the clerk to appellee, such as is suggested, lots 1 and 4. Appellee has not cited us to any page in the record before us where such a deed appears. Of course, if the deed referred to covered lots 1 and 4, then appellee would have a title independent of the common source, and, in that event, appellant necessarily would have had to recover on the strength of his own title.

Again, it is insisted that George Eickhoff acquired the tax certificates, which had been issued to John Scott, in trust to be sold for the benefit of himself and D. F. Scott, and that he did not acquire the certificates of purchase outright. There was a sharp conflict in the testimony of D. F. Scott and George Eickhoff in this regard. Even if it were permissible to engraft a trust on the instrument by oral evidence, it would have to be done by clear and convincing evidence. Where only two testify and their evidence is in direct conflict, and where neither witness had been legally impeached, it can not be said that the one upholding the affirmative has met the requirements of the rule. But the court is of the opinion that the trust contended for by appellee can not be engrafted upon the instrument by oral evidence.

It is also contended that appellants are estopped because George Eickhoff purchased the lots under execution sale to satisfy a judgment against appellee and the redemption by appellee of the lots from the execution sale. As we understand the law, the party claiming title has a right to purchase an outstanding title without affecting his right to assert or defend his original title. The redemption by appellee from the execution sale can not estop Eickhoff because he was not put to an election by the redemption. Appellee was entitled to redeem as a matter of law, and not at the election of Eickhoff.

It is also insisted that appellee is protected under the doctrine of innocent purchaser. As we understand

the case, appellee knew from the record that the land had been sold to John Scott for the non-payment of taxes and that the certificates were outstanding in his name. The certificates were assignable and he must necessarily have taken notice of that fact. D. F. Scott succeeded to the rights of John Scott and Eickhoff procured the certificates from D. F. Scott. The record also showed that Eickhoff had paid the taxes for some nine years. Under these facts, in order for appellee to avail as an innocent purchaser, it would have been his duty to inquire of D. F. Scott concerning the whereabouts of the tax certificates of purchase.

It is said by appellee that he placed one hundred loads of dirt on the lots, worth $100, after he acquired his quitclaim deed from D. F. Scott. We have re-read appellee's original brief and find no suggestion of that fact or that he claimed anything for improvements under the Betterment Act. So far as we have been able to ascertain, appellant did not abstract any evidence showing that the dirt had been placed on the lots by appellee and this evidence was not supplied in the original brief of appellee.

After careful consideration, the court is of opinion that it did not err in its judgment of reversal. The motion for rehearing is, therefore, overruled.