ELLSWORTH *v.* BENEDICT.

4-8687                                          216 S. W. 2d 392

Opinion delivered January 10, 1949.

368

*Hebert & Dobbs,* for appellant.

*Leland F. Leatherman,* for appellee.

HOLT, J.   May 31, 1946, appellant, E. C. Ellsworth, sued appellee, E. A. Benedict, for specific performance of an alleged written contract to sell 1.76 acres of real estate in the city of Hot Springs.   He alleged in his complaint "that on the 16th day of May, the defendant by letter, through his attorney, Lloyd Darnell, Esq., offered for sale the following described property; located and situated in Garland county, Arkansas, to-wit: (describing it).   That immediately the said Lloyd Darnell contacted the plaintiff and offered to sell him the said property; that said plaintiff wired the defendant an offer on the 25th day of May, 1946; that on the 27th day of May, 1946, the said Lloyd Darnell received a telegram accepting said offer of plaintiff; that said plaintiff immediately paid to the said Lloyd Darnell, attorney for defendant, the sum of $100 as good faith money for the performance of said contract; that he is now willing and ready and has been ready and willing to pay said balance when all papers have been properly executed; that since the consummation of the contract said defendant has wired the said Lloyd Darnell, his attorney, that he has changed his mind and will not sign the deed; that he still has failed and refused to sign said deed," and prayed for specific performance.

Appellee interposed a general denial and specifically denied that he had entered into a contract with appellant "for the sale and purchase by the said E. C. Ellsworth of any property owned by the said E. A. Benedict." He further denied "that Lloyd Darnell had authority to make any contract binding upon him for the sale and purchase of land; that if any contract was made by the said Lloyd Darnell with E. C. Ellsworth, it was made without authority; that Lloyd Darnell and E. C. Ellsworth represented to the said defendant at all times that they were representing the said defendant to his best interest as attorney and agent, respectively; that they, therefore, occupied a fiduciary capacity with respect to the defendant; and that, if in fact there was any contract, it was obtained by a breach of such fiduciary relationship and by concealment, misrepresentation, and fraud on the part of the said Lloyd Darnell and E. C. Ellsworth in that they represented to the defendant, who was a nonresident of this state and unfamiliar with the property here or the values thereof, that this property could not bring more than $1,000 at a sale, when, in fact, they knew that its value was in excess of $2,000; that instead of representing the said defendant to his best interest, the said Lloyd Darnell and E. C. Ellsworth continually endeavored by concealment, misrepresentation, and fraud as to the nature of the property and its value, to induce defendant to accept a grossly inadequate price for said property."

The trial court found all the issues in favor of appellee, and from the decree is this appeal.

Appellant says that his "theory of this case is that Mr. Benedict entered into a contract for the sale of his land with and to the appellant and the only question on appeal is whether or not there were present sufficient fraudulent representations such as would relieve the appellee therefrom."

The evidence shows that Mr. Darnell had represented appellee, Benedict, a nonresident, as his attorney in prior litigation in which he, Darnell, had se-

cured for Mr. Benedict a deed to the property here involved and at the time present litigation arose was holding this deed subject to Mr. Benedict's orders. Appellant, Ellsworth, was engaged in the real estate business in Hot Springs.

On April 15, 1946, Mr. Darnell wrote Mr. Benedict at his home in Portland, Oregon, informing him that he had procured the deed and requesting remittance of $40 for services rendered. We quote from this letter: ''What do you want me to do with the deed? I will be glad to mail it on to you or turn it over to some one here at your direction. Unless you have another person in mind to make this sale for you, Mr. Ellsworth, a realtor, is in this building and is highly reliable. He could make about as good a deal as any one else I know.''

Not having had a reply to the above letter, Mr. Darnell, on May 7th, again wrote Mr. Benedict requesting his fee and said: ''I have one party who came to see me the other day about the property who is willing to pay $950 for same. I believe I could get you as much as $1,000 for it. If you desire that I handle this matter for you, let me know in your reply. If you do, I will prepare a deed for you to execute and forward a cashier's check to you. If not, inform me as to what I should do with the deed.''

May 16, 1946, Mr. Benedict answered the above letter, remitting the fee requested and said: ''As to the sale of my property there, I am asking $1,400 for it because there is a little over ten lots with fifty-foot frontage, and I think I should get an average of $140 for each lot. I have been in contact with two other parties there who are interested in buying it. And if you will just keep the deed there in your possession for a while I will appreciate it. I will also let you know what to do about it in the near future.''

Mr. Ellsworth sent the following wire: ''May 23, 1946, E. A. Benedict, 4400 So. East 65th Street, Portland, 6, Oregon. Through Mr. Darnell, attorney, have accepted deposit *for you* to apply on sale price of twelve

hundred dollars cash *net to you* for the approximate two-acre parcel of land east of Oaklawn. This is subject to your acceptance. Wire acceptance or rejection. E. C. Ellsworth, *Realtor*."

Mr. Benedict testified: "Did he (meaning Darnell) recommend E. C. Ellsworth to you to act as your agent in the sale of this land? A. Yes. As I have stated, in Darnell's letter of April 15th he recommended Ellsworth to me as a highly reliable agent for me, to sell my property. Q. Did Mr. Ellsworth endeavor to induce you to sell this land, and if so, state what the circumstances were and the price he advised you to sell for. A. On May 24th, E. C. Ellsworth wrote to me and told me that Darnell had told him that I wanted $1,400 for it. Ellsworth suggested that I authorize him to sell it for not over $1,000. Q. State the circumstances of the telegraph offer made to you from which this suit resulted. A. The next evening after receiving Ellsworth's letter of May 24th, that is, on Sunday evening, May 26th, I received a telegram from E. C. Ellsworth, which was read to me over the telephone by the telegraph company, and which I understood to be that Darnell had accepted a deposit to apply on the sale price that would net me $1,200 cash. Q. Why did you accept the offer of $1,200 made to you? A. I believed that the property was only worth the $950 that Darnell had stated or the $1,000 that Ellsworth had stated, so I figured it was a good deal, and I sent a night letter to Darnell that I would accept $1,200 and to send the deed."

The night letter referred to which appellee sent to Darnell was as follows: "1946 May 26, PM. 2:12, Lloyd E. Darnell, Dodson Bldg., Hot Springs, Ark. Received telegram will accept $1200 net to me send deed and I will execute. E. A. Benedict."

Thereafter, on May 27th, Mr. Benedict wired Mr. Darnell as follows: "Have changed my mind about selling property. Will not sign deed. Send it to me. Acknowledge collect."

In explanation of this latter telegram, Mr. Benedict testified that after he had wired accepting the $1,200

offer, he received information, the following day, by telephone, from his former wife that Mr. Darnell and Mr. Ellsworth had arranged for a sale of the property to Jake Poe for $2,000, and further ''I considered them both my agents—Darnell as my lawyer, and Ellsworth to get as much out of the property as he possibly could by selling it for me. . . . Both Ellsworth and Darnell wanted to sell the property for me; Darnell, on May 7th, said he had a buyer for ,$950, and Ellsworth requested, on May 24th by letter, that I authorize him to sell it for me for not over $1,000.'' ˙Appellant testified that he was not acting as appellee's agent in the sale of the property, but for another party, and in effect, that he was dealing with him at arm's length. His contention is, as above indicated, that ''Mr. Darnell entered into a contract for the sale of his land with and to the appellant.'' On the contrary, appellee insists that appellant was representing him as his agent in the sale of the property and Mr. Darnell also as agent and attorney.

In support of his position, appellant relies upon his telegram of May 25th to Mr. Benedict: ''Through Mr. Darnell, attorney, have accepted deposit for you to apply on sale price of twelve hundred dollars cash net to you for the approximate two acre parcel of land east of Oaklawn. This is subject to your acceptance. Wire acceptance or rejection. E. C. Ellsworth, Realtor,'' and Mr. Benedict's reply, directed to Darnell, dated May 26th as follows: ''Received telegram will accept $1,200 net to me. Send deed and I will execute.''

As above noted, these two telegrams which appellant relied on as the alleged written contract upon which he based the present suit, were preceded by the letters *supra,* which we may, in the circumstances here, properly consider. This Court in *McGhee* v. *Cunningham,* 181 Ark. 148, 25 S. W. 2d 449, said: ''The contract upon which suit was brought was preceded by correspondence, which involved the exchange of a number of letters, and, while these letters cannot be considered for the purpose of altering or varying the terms of the written contract,

they may be considered as showing the relative situations of the parties, and thus enable us to determine the meaning of the language employed by them in their written contract.''

In one of the letters, Mr. Darnell had recommended appellant (Ellsworth) to appellee as being a competent and reliable real estate agent and appellant had learned of appellee's desire to sell through Mr. Darnell. Thereafter, on May 24th, appellant had written appellee requesting that appellee authorize him (Ellsworth) to sell the property ''for not over $1,000.'' On May 7th, Mr. Darnell had written appellee asking permission to sell for $1,000.

Following these letters, Mr. Ellsworth sent the telegram, *supra,* which, as we interpret it, on its face and in the light of these letters, meant that Ellsworth, as Benedict's agent, acting through or by the authority of appellee's attorney, Mr. Darnell, had accepted a deposit for him (Benedict), to apply on the sale price of $1,200 cash net to appellee. This message was signed ''E. C. Ellsworth, Realtor.'' If appellant, by this telegram, meant, as he insists, that he was offering to buy this property for himself, why did he state specifically that he had sold it for $1,200 cash net ''to you'' (appellee) and had accepted a deposit on the sale ''for you'' (appellee). That this message meant, as appellee contends, that Ellsworth was acting as an agent for appellee and not as a buyer, appears, in the circumstances here, to be clear and certain. Of significance is also the fact that he signed the telegram as a real estate agent and not as an individual.

An agent to sell land cannot become the purchaser thereof without disclosing that fact to the owner. The sale will be cancelled in a court of equity at the instance of such owner. In *American Mortgage Co.* v. *Williams,* 103 Ark. 484, 145 S. W. 234, this court said: ''The principle, we think, is well settled that a trustee or one who occupies a relation of confidence in the management or sale of property cannot deal with it in any man-

ner for his own benefit. This doctrine applies to the relation of principal and agent with reference to property which is the subject of the agency. It is uniformly held that 'no one can be permitted to purchase an interest where he has a duty to perform that is inconsistent with the character of a purchaser.' Where an agent who is entrusted with the sale of property purchases it himself without disclosing the fact that he is the purchaser to the owner, the sale will be cancelled in a court of equity at the instance of such owner.''

In Pomeroy's Equity Jurisprudence, Vol. 3, Fifth Edition, § 959a, p. 820, the rule is stated as follows: ''In dealings without the intervention of his principal, if an agent for the purpose of selling property of the principal purchases it himself, or an agent for the purpose of buying property for the principal buys it from himself, either directly or through the instrumentality of a third person, the sale or purchase is voidable; it will always be set aside at the option of the principal; the amount of consideration, the absence of undue advantage, and other similar features are wholly immaterial; nothing will defeat the principal's right of remedy except his own confirmation after full knowledge of all the facts.''

It is equally as well settled that a real estate agent or broker cannot represent both parties to a transaction without their full knowledge. *Featherston* v. *Trone,* 82 Ark. 381, 102 S. W. 196.

Having concluded that the preponderance of the evidence supports appellee's contention that appellant was acting as appellee's agent throughout, the decree must be, and is affirmed.