COLLINS *v.* HEITMAN.

5-733                                          284 S. W. 2d 628

Opinion delivered December 12, 1955.

*Martin K. Fulk* and *William H. Donham,* for appellant.

*John L. Hughes,* for appellee.

LEE SEAMSTER, Chief Justice. This is an appeal by the appellant, from a decree of the Saline Chancery Court, which quieted and confirmed title to 40 acres of Saline County real property in the appellee, H. H. Heit-

man, and cancelled a prior deed to appellant, W. H. Collins, to the same property, as a cloud upon the appellee's title. The property is described as follows: southeast quarter of the northwest quarter, section 13, township 1 south, range 14 west, Saline County, Arkansas.

On August 25, 1951, Mrs. Helen Thomas offered for sale at auction, certain lands owned by her, which were situated in Saline County, Arkansas. The auction sale was conducted by Ben Johnson, as auctioneer. Prior to the sale, Johnson had acquired a mortgage against the lands, taking over an indebtedness that had been negotiated by the firm of Rightsell, Collins, Barry & Company, Inc. In an effort to liquidate this indebtedness, Mrs. Thomas and Ben Johnson entered into an agreement, wherein, Johnson was to sell the Midland Farms, which was owned by Mrs. Thomas and consisting of 390 acres, at auction on terms of 50% cash and the balance due, with interest, six months thereafter. According to the terms of the contract, the proceeds of the sale were to be placed in escrow and applied to the liquidation of the indebtedness.

In an instrument dated August 24, 1951, Mrs. Thomas and Ben Johnson, acting through their attorneys, entered into an escrow agreement, whereby, Collins and Company, a partnership composed of John Collins and W. H. Collins, appellant herein, was designated as the escrow agent. For a fee of $500, the escrow agent was to handle all funds derived from the auction sale, and upon receipt of the purchase money, the escrow agent was to deliver to the purchasers of the lands, their deeds with title insured, and further, to pay Johnson any indebtedness owed by Mrs. Thomas on the mortgage. Any remaining money, after liquidation of the indebtedness, was to be delivered to Mrs. Thomas. Pursuant to this agreement, the auction sale was held on Saturday, August 25, 1951, at the Midland Farm premises.

At the start of the auction sale, the auctioneer announced the terms and conditions governing the sale; he also gave notice that deeds for successful bidders would be available at the office of Collins and Company and

could be procured after 2 P.M., Monday, August 27, 1951. This announcement also provided, among other things, that the owner of Midland Farms reserved the right to reject any bid or bids, on any lot, group of lots, or the entire farm. The appellee herein, H. H. Heitman, was the successful bidder at the sale for the 40-acre tract here in litigation, having submitted the highest bid in the sum of $5,910 and having that sum accepted by the auctioneer. Appellee reduced his bid to writing and delivered his check for one-half of this amount. His check was accepted for the required deposit, and he was issued a certificate of bid, showing the balance due on the purchase price.

On the following Monday morning, August 27, 1951, a meeting was held in appellant's office, for the purpose of taking care of certain business that arose out of the auction sale. Among those persons present were, the attorney for Mrs. Thomas, the attorney for Ben Johnson, the appellant, W. H. Collins, who was the escrow agent, and other persons connected with the auction sale. At this time, the attorney for Mrs. Thomas rejected four of the bids that were received at the auction sale. One of the four bids rejected was the appellee's bid of $5,910, for the purchase of the 40-acre tract in question. On the same day, pursuant to the rejection of the bids, appellee was notified by phone that his bid had been rejected by Mrs. Thomas. His check in the sum of $2,955, which had been previously delivered by him as a down payment on his bid, was personally returned to him by Walter P. Watts, an official for the Ben Johnson Auction Company. The appellee accepted the return of his check and surrendered his certificate of bid, since he thought Mrs. Thomas had personally rejected his bid on the property.

Subsequently, on the same date, the appellant, W. H. Collins, submitted a bid in the sum of $6,250, for the purchase of the 40-acre tract of land in question. The attorney for Mrs. Thomas drew up an offer and acceptance; the terms being $3,125, in cash and the balance due six months thereafter. The receipt of the earnest money was accepted by W. P. Watts, agent for Ben Johnson, and the

offer was accepted in writing by the attorney for Mrs. Thomas. Mrs. Thomas was not present, nor did she have knowledge of this business transaction.

On the same afternoon, appellee met Mrs. Thomas, and while conversing about the auction sale, she informed him that she had not rejected his bid on the 40-acre tract and it was her desire that appellee have the property for the purchase price bid at the auction. On the following day, Tuesday, August 28, 1951, Mrs. Thomas tendered to appellee a written statement to this effect. Shortly thereafter, the appellee met with appellant to discuss the matter of conflicting interests to the property.

On August 31, 1951, Mrs. Thomas signed a letter ratifying and confirming her attorneys' acts in rejecting the four bids on August 27, 1951, including the appellee's bid of $5,910, for the 40-acre tract. This letter also ratified and confirmed her attorney's act in accepting the bid of appellant, for the 40-acre tract. On September 5, 1951, Mrs. Thomas delivered to appellant a warranty deed to the property. This deed was filed for record in Saline County at 10:20 A.M. on September 10, 1951.

On September 10, 1951, at 8:18 A.M., appellee filed suit against Mrs. Helen M. Thomas in the Saline Chancery Court, for specific performance of his alleged contract of sale of the 40-acre tract of land. Upon trial of the issues, the trial court found, in its decree dated May 12, 1952, that a valid sale had been made to appellee and ordered Mrs. Thomas to execute and deliver to appellee a deed to the 40-acre tract. Upon Mrs. Thomas' failure to act, the court appointed a commissioner to make the conveyance. On September 26, 1952, the commissioner executed a commissioner's deed to appellee for the 40-acre tract in question, pursuant to said decree.

On October 1, 1952, appellee filed this action in the Saline Chancery Court against appellant, to set aside appellant's deed to the property in question, as a cloud upon his title. Appellee claimed title through his commissioner's deed of September 26, 1952. Appellant answered and filed a counter claim against appellee, inter-

posing the defense of innocent purchaser for value and without notice. The appellant claimed that his title to the property was superior to that of appellee. In a decree dated December 31, 1954, the chancellor held that appellee was the owner of the land by virtue of his purchase from Helen M. Thomas, at the auction sale conducted on August 25, 1951, and that appellee acquired title in fee by virtue of the commissioner's deed dated May 12, 1952. The chancellor further found that at the time appellant acquired his warranty deed from Mrs. Thomas, on August 27, 1951, he was acting in the capacity of escrow agent for the parties, and he had actual knowledge of the sale of such lands to appellee, therefore, appellant was not a *bona fide* or innocent purchaser without notice, at the time he acquired the deed to the lands from Mrs. Thomas. This appeal follows.

The appellant lists three points for reversal, they are: (1) the appellee failed to prove a superior title as a matter of law; (2) the appellant was a *bona fide* purchaser for value; and , (3) the appellee is estopped from denying that appellant is an innocent purchaser for value.

The evidence is undisputed that appellee submitted the highest bid for the 40-acre tract and this bid was accepted by the auctioneer and appellee delivered his check for the required down payment. The appellant contends that Mrs. Thomas had an indefinite time limit in which to reject the offers. However, the printed announcement merely stated "that the owners of the property involved reserved the right to reject a bid or bids on any lot, group of lots, or the entire farm."

Ark. Stats. (1947), § 68-1421 (2), covers sale by auction of personal property and provides as follows: "A sale by auction is complete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner: Until such announcement is made, any bidder may retract his bid; and the auctioneer may withdraw the goods from sale unless the auction has been announced to be without reserve."

The law that governs the sale of personal property by auction also governs the sale of real estate by auction. Such terms and conditions that may affect the rights of the parties must be announced and agreed upon before the completion of the sale. Unless otherwise provided, the sellers' right to reject any or all bids, must be exercised before the acceptance of the successful bid. The auctioneer is the agent of the seller and his act in accepting the bid is binding on the seller. The seller has no right to reject a bid after the bid has been accepted and the purchaser has delivered the required payment. The same rule applies to the purchaser, who has no right to reject the sale after he has submitted the successful bid and has delivered the required payment. In the instant case, a contract was entered into when appellee's bid was accepted at the auction sale, without rejection by the seller, and appellee delivered the required payment. The contract was binding at this time.

It is apparent from the record compiled in this case, that appellant and appellee trace their respective titles to Mrs. Thomas. The appellant contends that in a suit to quiet title, the plaintiff must prevail upon the strength of his record title, and, an equitable title is not sufficient against a subsequent purchaser with superior record title. In this statement of the law appellant is in error. The law governing this situation was clearly announced in *Eickhoff* v. *Scott,* 137 Ark. 170, 208 S. W. 421, where this court said: ''It is true, in an adversary suit, that the plaintiff must recover on the strength of his own title and not the weakness of the defendant's title. *Knauff* v. *National Cooperage and Woodenware Co.,* 99 Ark. 137, 137 S. W. 823, and cases cited therein. This rule is applicable where the parties claim title from independent sources, and has no application in cases where the parties trace their respective titles to a common source. Where parties trace their title to a common source, the one must prevail who has the superior equity.'' Since both parties claim title through Mrs. Thomas and since appellee's title antedates and is superior to that of appellant, it necessarily follows that appellee is entitled to have same quieted.

The appellant contends, in his second point, that he was a *bona fide* purchaser of the 40-acre tract, for value. We cannot agree with appellant. From the beginning he was closely identified with this auction sale. Appellant acquired his deed from Mrs. Thomas at a time when he was acting in the capacity as escrow agent for her, in the handling and conducting of the sale of the lands in question. In this capacity as such escrow agent, appellant had actual knowledge of the sale of said lands to appellee and therefore could not be considered a *bona fide* or innocent purchaser without notice at the time he acquired said deed from Mrs. Thomas. One who purchases real estate with the knowledge that another had a contract of purchase is not a *bona fide* purchaser, and if he acquired such knowledge at any time before payment of the consideration, he will not be protected as a purchaser in good faith. *Valley Planing Mill Co.* v. *Lena Lumber Co.*, 168 Ark. 1133, 272 S. W. 860.

In Vol. 66, Corpus Juris, Section on Vendor and Purchaser, page 1060, we find the following: "A subsequent purchaser from a vendor with notice actual or constructive, of a prior contract of sale of the land takes the land subject to the contract whether he has a deed or not, and although he has paid a valuable consideration."

We have often stated that an agent, regardless of how innocent his intentions may be, cannot place himself in a situation where personal interests conflict with the duties owed his principal. In the recent case of *McHaney* v. *McHaney*, 209 Ark. 337, 190 S. W. 2d 450, 162 A. L. R. 1175, we said: "Everyone, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business, or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such interest or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common-sense and honesty, as well as law. The agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the

agreed compensation for his services. He may not speculate for his gain in the subject-matter of the employment. He may not use any information that he may have acquired by reason of his employment, either for the purpose of acquiring property or doing any other act which is in opposition to his principal's interest.''

The cardinal principle of all agency is good faith. In accepting the office of depositary, appellant became the agent of both buyer and seller. This created a relation of confidence the depositary could not thereafter violate nor pervert to his own advantage or the detriment of either principal. Upon one claiming to be an innocent purchaser rests the burden of proving his good faith. *Abbott* v. *Parker,* 103 Ark. 425, 147 S. W. 70. We think the chancellor was correct in finding that appellant was not an innocent purchaser without notice, at the time he acquired a deed to the 40-acre tract from Helen M. Thomas. As escrow agent, the appellant had actual knowledge of the sale of said land to the appellee.

The appellant is in no position to plead estoppel. He was aware of the sale of the land to the appellee before he expended any money on his alleged purchase. He attempted to purchase the property from the auctioneer, at a private sale, after he had received actual knowledge that the property had been sold to the appellee. The record reveals that appellant knew that Mrs. Thomas had not rejected the appellee's bid. In fact he knew that Mrs. Thomas had prepared a written statement, whereby, she informed appellee that she had not rejected his bid and she wanted appellee to have the property for the amount of the bid. The appellant did not expend any money for the purchase of the 40-acre tract until several days after he received notice from appellee of the latter's claim. Appellant was escrow agent for the parties and was charged with the duty of carrying out the terms and conditions of the escrow agreement. As such escrow agent, he was not entitled to avail himself of any advantage that his position gave him to profit beyond the agreed compensation for his services. It is uniformly held that no one can be permitted to purchase an interest

in property where he has a duty to perform that is inconsistent with the character of a purchaser. *Culberhouse* v. *Shirey,* 42 Ark. 25; *Rogers* v. *Lockett,* 28 Ark. 290; *Ellsworth* v. *Benedict,* 214 Ark. 367, 216 S. W. 2d 392.

Upon trial of this cause, the appellant did not plead estoppel. The appellant has failed to bring himself within any of the exceptions to the general rule. Therefore, the appellant cannot raise the plea of estoppel for the first time, upon appeal to this court. *Gerard B. Lambert Co.* v. *Rogers,* 161 Ark. 307, 255 S. W. 1089; *Reeder* v. *Meredith,* 78 Ark. 111, 93 S. W. 558.

Finding no error in the trial court's decree in cancelling appellant's deed and confirming title in appellee as against appellant, the decree is affirmed.

Justice SMITH dissents.

GEORGE ROSE SMITH, J., dissenting. The majority opinion seems to rest primarily upon (a) the view that Mrs. Thomas did not reserve in advance the privilege of rejecting the bids at the auction and (b) the rule that a fiduciary cannot purchase an interest in the subject matter of his trust. My reasons for disagreeing with the conclusion reached can best be stated by taking the events in chronological sequence.

The auction sale was held during the day on Saturday, August 25. Heitman testified that he heard the auctioneer announce that Mrs. Thomas had until sometime on Monday (noon or two o'clock) to reject bids. Heitman's later conduct in surrendering his certificate of purchase and in persuading Mrs. Thomas to give him a written statement that she had not rejected his bid confirm his candid admission that he understood that the privilege of rejection had been reserved. In view of Heitman's own testimony it is readily apparent that this is not a case in which the right of rejection was not properly reserved in advance.

On Saturday night Mrs. Thomas met with her attorney, Gerland Patten, and with her son to evaluate the results of the day's proceedings. The main purpose of

the auction had been to save the home place if possible. The bids were more than enough to pay the mortgage; so Mrs. Thomas directed that the offer for the home place be rejected. All three persons present agree that no decision was reached with respect to any other bid and that Mrs. Thomas gave Patten unlimited authority to act in the matter as he thought best.

On Monday morning Patten decided to reject, in addition to the bid for the home place, the Heitman bid and two others. He testified that he refused the Heitman offer because he thought the property was worth more than the amount bid. It was only after the notice of rejection had been delivered to the escrow agent that Collins inquired what Patten would take for the property. Patten asked $7,000 for the tract, and Collins countered with an offer of $6,500, of which $250 was to be paid by a reduction in the escrow agent's fee. Patten left Collins' office, telephoned Mrs. Thomas' son, and discussed the new offer with him. The two decided that the offer should be accepted, and that afternoon Patten, who had long had authority to act for Mrs. Thomas, entered into a written contract of sale with Collins. During the same day Heitman was notified that his bid was rejected, and he surrendered his certificate of purchase and accepted the return of his earnest money. Heitman testified that he then thought the matter to be closed.

At that point in the course of events it seems plain to me that Collins had acquired the prior and superior equity. The Heitman bid had been rejected by Mrs. Thomas' agent, who undoubtedly had that authority. Collins had entered into a written contract which was unquestionably binding upon him as well as upon Mrs. Thomas. That he did not make a payment until a few days later is immaterial, as the mutual promises made the contract enforcible by either party.

Doubtless Collins was motivated by self-interest in purchasing the land, but I do not see how that interest conflicted with any fiduciary duty on his part. The Heitman offer had already been rejected; there is nothing in

the record to suggest that the rejection was a collusive maneuver having as its purpose a resale to Collins at a better price. When the Heitman bid was rejected in good faith the tract was withdrawn from the escrow arrangement, which had to do only with the sales at auction, and Mrs. Thomas was free to sell the land to anyone she chose. As far as I can see, Collins was equally free to purchase, since his fiduciary duty toward the bidder had been terminated by Mrs. Thomas' attorney. We have indicated that the prick of conscience that would be felt by a punctiliously honarable man warns a fiduciary that he is violating the high standard of conduct required of trustees. *Johnson* v. *Lion Oil Co.*, 216 Ark. 736, 227 S. W. 2d 162. It does not seem to me that even the most scrupulous person would have hesitated to act as Collins did in this case.

If I am correct at this point the later events are immaterial. Mrs. Thomas' written statement that she had not rejected Heitman's bid was contrary to the facts as the law must view them, for she had rejected the bid through her agent and had even agreed to sell the land to another. It may well be that her statement to Heitman gave him a cause of action against her, but it cannot be said that his rights relate back to the day of the auction. His rights as a bidder were completely extinguished when he acquiesced in the rejection of his offer. Those rights cannot be revived through the doctrine of relation back to the detriment of an innocent purchaser whose interest arose in the meantime.